Pearson, C. J.
 

 The matter brought up by the appeal makes it necessary for this Court to decide two questions. 1st. Is the applicant entitled by law to the amount claimed for his salary as Adjutant General of the State? 2nd. Had the Superior Court of law, for the county of Chatham, power to require the Governor of the State to make his warrant on the public treasurer for the payment of the salary, to which the applicant is by law entitled, upon an allegation, that the Governor had refused to make the warrant?
 

 1st. The constitution of the United States, article 1, sec. 8, part 14, 15, provides,
 
 “
 
 the congress shall have power to provide for calling forth the militia to execute the laws of the Union, suppress insurrections and repel invasions.” “ To provide for organizing, arming and disciplining the militia and for governing such part of them as may be employed in the service of the United States;
 
 reserving to the
 
 States, respectively,
 
 the appointment
 
 of the officers, and the authority of training
 
 *547
 
 4he militia according to the discipline prescribed by congress.” In pursuance of this power, congress, by the act of May, 1792, provided for the organization of the militia, and created the ■offices required by the plan of organization, and among others, the office of “ adjutant general,” and in accordance thereto, the Legislature appointed field officer’s and an Adjutant General by joint ballot, and ‘continued to do so, until the year 1856 ; having in the year 1812, fixed the salary of the adjutant general at $200
 
 qp&r 'annum.
 
 In 1856, Bevised Code, ■chapter 70, section 11, provides for the election of all field officers by the officers of the respective divisions, brigades, &c., to continue in office three years, and section 9, confers the appointment of adjutant general on the Governor, to continue in office three years by section 11, and fixes his salary •at $200, to be paid
 
 qua/rterly
 
 by the treasurer on a warrant from the Governor, while by chapter 102, section 2, the salary of the adjutant general is fixed at $200, to be paid
 
 s&im■annually
 
 by the public treasurer, upon warrant from the Governor. The act of 1858, 'chapter 22, enacts, “ so much of the 9th section of the 70th chapter, Bevised Code, entitled “Militia,” as relates to the appointment and salary of adjutant general, be, and the same is hereby repealed.”
 

 We were informed by the Attorney General, on the argument, that the Governor founds his opinion adverse to the claim of the applicant on this statute. So, the question defends on its construction. We have seen that the office of adjutant general was created by an act of Congress, in pursuance of the constitution of the United States, and that only the right of appointment was reserved to the State and devolved upon the Legislature; it follows that the Legislature had no power to abolish the office, and the suggestion, that such was the effect of the act of .1858, falls to the ground, indeed, it was not pressed by the Attorney General, but he assumed the position that the effect of the act of 1858, was to vacate and nullify the appointment of the applicant by repealing the act under which it had been made. We do not concur in this view of the subject. In respect to all vacancies
 
 *548
 
 that should thereafter occur, the Legislature, unquestionably* had power to take from the Governor the right of appointment which was conferred on him by the act ©f 1856, and either exercise it itself or provide some other mode for having; the appointment made j but in respect to th& appointment which had been made, the question is altogether different.. The legal effect of the appointment was to give the office to the applicant, and he became entitled toitasa “ vested right’7 for the term of three years* from which he could only be removed in the manner prescribed by law, and of which tho Legislature had no power to deprive him. This is settled ;
 
 Hoke
 
 v.
 
 Henderson, 4
 
 Dev. 1. So, the act of 1858, cannot have the effect contended for, oven if, in the absence of express words, we were at liberty to infer that such was the-intention, and its only effect is to take from the Governor the right of filling future vacancies and vest it again in the Legislature.
 

 It was then urged, that however it might be‘in respect to
 
 the office,
 
 the
 
 salary
 
 was created by the Legislature, and, at any rate, it has the power to abolish that t It is true, the salaries of all persons holding office under the appointment of the State, are within the control of the Legislature, except those officers who are protected by the constitution, as is the case of the Judges, and the salary may be increased or reduced during the term of the office, for it is presumed, offices are accepted with reference to a general power, of which the Legislature has not divested itself, and in this particular, the appointment to, and acceptance of an office with a salary, differs from an ordinary contract, the terms of which cannot be altered without mutual consent, but in putting a construction upon this statute, in respect to the salary, several considerations are to be weighed. A statute, which
 
 reduces
 
 a salary during the term of office, and one which
 
 talees away
 
 the
 
 salary altogether,
 
 stand on a different footing, for, in the latter case, the object would evidently be to starve the incumbent oui of his office, and thereby do indirectly what could not be done directly. So as to make applicable the remarks made
 
 *549
 
 in the case of
 
 HoJee v. Henderson supra,
 
 in which there seems to be much force, that such indirect legislation is as obnoxious to the-charge of being unconstitutional as an act directly ■depriving one of his office.
 

 A proper-'construction of the statute does net lead to the inference, that it was the intention to -abolish the salary, in the event that the applicant still -continued -entitled to the office and liable for the discharge of its duties. On the contrary, the-clause which repeals so much of the 9th section as relates to the salary, is a mere corrollary ©r incident to the -clause Which repeals so much -of that section as relates to the appointment of the Adjutant General, and consequently, the one cannot, by any rule of construction, be made to extend in its operation further than the other, indeed, to make ‘the clause, in respect to the salary,'apply to the present in■cumbent, when, as we have seen, the other -clause does not deprive him of the office, -would be to plaee the Legislature in this attitude — 64 We mean-to abolish the office; if we have not the power to do so, then we mean to deprive the present incumbent of his office; if we have not the power to do that, then we mean to take away his salary!” A construction leading to such a result, is inadmissible, in the absence of-express 'words, showing such to have been the intention.
 

 A suggestion was made by Mr. 'Cantwell, which we think ¡explains the clause in relation to the salary, it is this: by the '9th section, chapter 70, Eevised Code, the ¡salary is payable
 
 'Quarterly j
 
 by the "2nd section, chapter Í02, the salary is payable semi-annually, and the purpose of this provision -of the ¡act of 1858, was to remove fhat incongruity., -and leave the ■salary to be ‘paid semi-annually. So, our conclusion is, that the-act of 1858, should be so construed as to take from the Governor the right to'fill future vacancies and restore it to the Legislature, and to leave the salary to be paid semi-annual•ly, according to the provision of chapter 102, section, 2.
 

 2. Having, arrived at the conclusion that the applicant is, ‘by law, entitled to the salary claimed by him; the solution of
 
 the
 
 second question is an easy one, for as there is a le
 
 *550
 
 gal right, the courts, as a matter of course* have power h> era-force it., The power of a court, by the’writ of mandamus, to> compel an executive officer to do an act merely
 
 vrm%isterialf
 
 in order to enforce an ascertained legal right, is-settled by the eases of
 
 Mabray
 
 v.
 
 Madison,
 
 1 Cranch, 64, and
 
 Kendal
 
 v.
 
 United States,
 
 12 Peters, 834. In the latter case, by an act of Congress, the solicitor of the treasury was authorised and directed to* adjust the balance, to which the- relators- were entitled for extra services in carrying the mail,, and the Pest Master General was directed to- gi.ve- them a credit for whatever sum the-solicitor should decide t® be due to them. The solicitor accordingly ascertained the balance, but the Post Master General refused to give credit for the amount, and the Court, by the writ of mandamus, compelled him to do so, on tire ground, that it was not an official duty, about which he had,a discretion, but a mere ministerial act; and in the argument, it is assumed that, under like circumstances, the writ-might be issued against the President himself, and the stress-®f the decision is put on the question oí' its- being’ a ministerial or- an official act.
 

 The alleged ouster from offie©, set out in the petition, is not a mere ministerial act, but evidently inwolves-an enquiry into the official conduct of the Governor, which cannot be passed @n in this mode of proceeding. That portion of the petition, which relates to it, should be rejected.
 

 We do not enter upon the enquiry as to- how the writ will be enforced, because we-are not allowed to- suppose that the question will arise, feeling assured that the sole purpose of the Governor is to obtain a jpdicial construction of the statute-in question. This opinion will be certified, to the end that an alternative mandamus may issue, requiring’John W. Ellis, Governor, to make bis warrant to the public treasurer for the-payment of the salary ©f the applicant, R. C. Cotten, Adjutant General, according the prayer of his petition.
 

 Per Curiam,
 

 Judgment reversed!.