PEOPLE OF N. C. *ex rel.* NICHOLS and others *v.* McKEE and others.

THE PEOPLE OF NORTH CAROLINA *ex rel.* JOHN NICHOLS and others *v.*
WM. H. McKEE and others.

The Legislature, like the other departments of the State Government, acts under a *grant* of powers, and cannot exceed that grant.

There is no express grant of power to the legislative department to appoint to office; but there is an express prohibition.

The general appointing power is given to the Governor with the concurrence of the Senate; the power to fill vacancies, not otherwise provided for, is given to the Governor alone, and *that*, whether the Legislature is in session or not, and without calling the Senate.

The Directors of the Institution for the Deaf and Dumb and the Blind are officers, made so by the Constitution and so called. The Legislature has no right to appoint such Directors.

CIVIL ACTION, of the nature of a *quo warranto*, for the recovery of the office of the "Board of Trustees of the N. C. Institution of the Deaf and Dumb and the Blind," determined at Fall Term, 1872, of WAKE Superior Court, before *Watts, J.*

Defendants held, exercised and claimed the offices demanded by the plaintiffs, by and under an act entitled "An act to alter chapter six of the Revised Code, concerning the North Carolina Institution for the Deaf and Dumb and the Blind," ratified the 21st day of January, 1871. The following was the case agreed:

"That on the 1st day of March, 1872, the plaintiffs were appointed by the Governor of the State of North Carolina to the office of "The Board of Trustees of the North Carolina Institution for the Deaf and Dumb and the Blind"; that they accepted said office, were duly qualified thereto, and assumed the duties thereof; and immediately upon their acceptance as aforesaid, and before the commencement of this action, they notified the defendants of their said acceptance and demanded of them that they relinquish and surrender to plaintiffs said office, and turn over and deliver to

them all books, money and other property belonging and appertaining to said office.

2. That the defendants are in possession of said office, exercising the powers and receiving the emoluments thereof; and have continued to exercise the powers and to receive the emoluments of the same, notwithstanding the plaintiffs' appointment, and the demand by them as aforesaid."

Upon the above state of facts (after argument) his Honor held:

(1.) That the defendants are not entitled to hold said office, or to exercise the powers or to receive the emoluments thereof.

(2.) That the plaintiffs are entitled to hold said office, and to exercise the powers and receive the emoluments thereof.

(3.) That the defendants relinquish and surrender said office to the plaintiffs, and deliver to them all the books, money and property belonging and appertaining to said office. His Honor gave judgment in accordance with his said ruling, and also that the plaintiffs recover of defendants their costs.

From this judgment the defendants appealed.

*Fowle, Busbee & Busbee* and *Merrimon,* for appellants.
*Batchelor, Edwards & Batchelor,* contra.

READE, J. The theory of our State government is, " that all political power is vested in and derived from the people." Con. Art. 1, Sec. 2. The Constitution is their grant of powers, and it is the only grant which they have made. " And all powers not therein delegated remain with the people." Art. 1, Sec. 37. This last clause will not be found in the former Constitutions of the State. The Constitution then proceeds to divide the government into three departments, Legislative, Executive and Judicial, and makes a grant of powers to each department, under its appropriate head, and directs

that they shall be " forever separate and distinct from each other." Neither is superior or inferior to the other, but each has its appropriate functions, and in the exercise of them, is independent and supreme. To the Legislative department is granted the power of *making* laws; to the Executive department the power of executing laws; and to the Judicial department, the power of *expounding* the laws.

It is true that their several functions sometime shade into each other as do the colors of the rainbow; but still they are distinct—as where the Governor appoints and the Senate confirms; or where the Governor fills vacancies in the judicial department. It follows that it is not true, as contended for upon the argument, that the Legislature is supreme except in so far as it is expressly restrained. However that may be in other governments, or however it may have heretofore been in this State, it is plain, that since the adoption of our present Constitution the Legislative, just like each of the other departments, acts under a *grant* of powers, and cannot exceed them. This being so, it is indispensable to good government that each department should confine itself strictly to the exercise of its legitimate functions. And then, however much they may shade into each other, there will still be harmony. It is only where the powers are brought in conflict that they become embarrassing and dangerous.

The first question is, to which of the departments has the constitution granted the power of appointment to office? If the Constitution does not in *express* terms grant the power to any one of the departments, and we have to solve the question by *construction* or *implication*, then we would have to consider whether the duty in any given case, is a Legislative, or an Executive, or a Judicial one; but if there is an express grant, then, of course, that must govern.

Under the first Constitution for the State, the Legislature was the general appointing power. It elected the Governor, his Council and other Executive officers, the officers of the

Military, the Judges of the Courts, Justices of the Peace, &c. The Governor had no appointing power, except to fill vacancies when the Legislature was not in session. Under the present Constitution there is an entire change. The people have reserved to themselves the election of almost all the offices in the State. There are still some of the officers, which, for convenience, are otherwise appointed or elected, or chosen, as the case may be, and we proceed now to en-quire which of the departments the power is given:

1. We will first consider, what express grant of appoint-ing power is made to the Legislature.

" Art. II, sec. 20. The House of Representatives shall choose *their own* speaker and other officers.

Sec. 22. The Senate shall choose *its* other officers, and also a speaker *pro tempore* in the absence of the Lieutenant Gov-ernor, or when he shall exercise the office of Governor."

The foregoing are all the grants of powers of appointment to the Legislature under the second article, which is the legislative article. And it will be observed, that even these are not grants to the Legislature as a *body,* but only to each *branch* to choose its own officers. Under the third article, which is the executive article, sec. 10, " The Governor shall nominate and by and with the advice and consent of the Senate, appoint all officers, &c., *and no such officer shall be appointed or elected by the General Assembly.*"

Except the foregoing, there is no other express grant of appointing power to the Legislature, and the section last-quoted is only the power of one branch to confirm or reject the nominations of the Governor, with an express prohibi-tion to the General Assembly as a body in regard to *all* officers. So, it is plain that there is not only no express grant of power to the legislative department to appoint to office; but there is no *express prohibition.*

2. In the second place we will consider what express

grant of appointing power is made to the Executive Department.

Art. III, sec. 10. " The Governor shall nominate, and by and with the advice and consent of a majority of the Senators elect, appoint all officers whose offices are established by this Constitution, or, which shall be created by law, and whose appointments are not otherwise provided for, and no such officer shall be appointed or elected by the General Assembly."

That section, read without any verbal criticism, would seem to make the *Governor the general appointing power,* and to *exclude the Legislature* altogether.

Section 13 enumerates the principal Executive officers, and provides that, " If the office of any of said officers shall be vacated by death, &c., it shall be the duty of the Governor to appoint," &c.

The foregoing are all the express grants under the said Executive article. But under Article IV, which is the Judicial article, section 31, it is provided, that " All vacancies occurring in the offices provided for by this article of the Constitution shall be filled by the appointment of the Governor, unless otherwise provided for," &c. And, under Article VII, section 11, the Governor was authorized to appoint Justices of the Peace in each county, until elections could be held.

From the foregoing it is plain that the general appointing power is given to the Governor, with the concurrence of the Senate; and that the power to fill vacancies, not otherwise provided for, is given to the Governor alone, and that, whether the Legislature is in session or not, and without calling the Senate.

3. In the third place we are to consider what appointing power is expressly given the judiciary. It seems that the only power expressly granted to the Supreme Court, is to

appoint its clerk; and to the Superior Court, to fill vacancies in their clerkships.

Reading the whole Constitution, and without any hypercriticism, it is plain, that such officers as are not elected by the people at the polls, and most of them are so elected, are to be appointed by the Governor, the Senate concurring, except the immediate offices of each branch of the Legislature, and the immediate officers of the Supreme Court; and that all vacancies are to be filled by the Governor alone, except such as are otherwise specifically provided for. And the Legislature has no more right to appoint the Directors of the Asylums than the Governor has to appoint the clerks of the Legislature.

4. In the next place we are to inquire whether the Directors of the Insane Asylum, Deaf and Dumb Asylum, Penitentiary, &c., are officers; or whether they are only servants, employees, or contractors of the State. The arguments upon this part of the case were exhaustive, and the citations of authorities abundant. The learned counsel who insisted that they are *not* officers, defined an office to be, a lodgment of some portion of the sovereignty of the State; and an officer to be, one who exercises some portion of the sovereign power. Take that to be so, for the sake of argument, or put it in another form, and say, that, an office is a part of the government, and part of the State polity, and that an officer is one who takes part in the government, and then try our case by that test. The Constitution establishes—i. e., " secures the permanent existence of,"—as a part of the State polity, certain charitable institutions for the care of the unfortunate, and penal institutions for the punishment of criminals; can these institutions exist without a board of directors? And is not such a board an office, a lodgment of a portion of the government? And are not the directors officers, taking part in the government? The *statement* of the case is enough. We do not pursue the argument farther; because, the Con-

stitution not only *makes* them officers, but in express terms *calls* them officers—which seems to have been overlooked by the learned counsel.   Art. III., sec. 7.   " The *officers* of the Executive Department and of the *public institutions* of the State, shall report to the Governor," &c.   And note, that this is under the Executive Article of the Constitution.

The Governor with the advice of the Senate, having the appointment of all *officers;* and the directors of the Public Institutions being *officers,* it follows that their appointments are with the Governor and Senate, unless otherwise provided for.   It is not pretended that they are otherwise provided for by *express* terms in the Constitution, but it is insisted that they are provided for by *implication:*  (1.) because the Legislature has *all* powers, except wherein it is restrained. But, we have seen that is not so; for the Legislature, like the other departments, acts under *a grant* of powers.   (2.) Because they have been provided for by law, to wit: by appointment of the Legislature, which, it is insisted, takes the appointment from the Governor which he would otherwise have had with the Senate under Art. 3, Sec. 10.   On the other side it is insisted, in regard to this last position, that, " not otherwise provided for," means, not otherwise provided for *in the Constitution.*  So that, one side insists upon reading the 10th section, " not otherwise provided for *by law.*"   And the other side insists upon reading it, " not otherwise provided for *in the Constitution.*"

It has already been said in two cases in this Court, *Clarke* v. *Stanly,* 66 N. C. R. and *Holden* v. *University Railroad,* 63 N. C. R., what " not otherwise provided for," meant, " in the Constitution;" but they were *dicta,* and therefore we have considered it as an open question.   And at the threshold of the discussion, we make these inquiries: Why should the Constitution give the general appointing power to the Governor and Senate, in all the offices named in the Constitution, and not give the same power in regard to offices to be created

thereafter or which had been created before? And why should the Constitution expressly prohibit " the General Assembly " from electing any officer named in the Constitution, and permit the General Assembly to elect officers thereafter to be created?

The Constitution secures to the people the election of almost all the officers in the State. For such as they did not choose to elect, or, it was not convenient for them to elect, the most convenient other mode was prescribed, to wit: nomination by the Governor. Elections were taken away from the General Assembly, because it is a large body with two branches and is very expensive. *That* was one of the evils; there may have been others. Would not the evil exist in electing officers thereafter to be created, as well as officers named in the Constitution? Doubtless. And must we not construe the provision with reference to the evil? Put the election of half a dozen Directors, for a half dozen Institutions each, in the General Assembly, and circumstances would often occur which would make the expense and inconvenience enormous. But then it is said, that the election need not be by the Legislature itself, but that it may be otherwise provided for by law. But it is answered, why should it be supposed that it was the purpose of the Constitution to allow the Legislature to appoint other modes for filling offices than the mode prescribed in the Constitution? If the mode prescribed in the Constitution was not the best, why was it prescribed? If it was the best, why allow it to be altered? And especially why leave the mode at sea so as to engender conflicts between the Departments?

In was insisted by Mr. Battle with much confidence, that unless the 10th section is so construed as to give the Legislature power to provide for filling offices, then the government cannot be administered, and must fall; because no provision is made in the Constitution for filling *vacancies* in the *county* officers; and it would be impracticable for the

Governor to fill them. The county offices and officers will not be found under any of the articles of the Constitution, which we have been considering, but under the article, " Municipal Corporations." And while the *election* of all the county officers are provided for by the people at the polls; yet, if *vacancies* occur in some of them, the mode of filling them is not *named*. If there were *no* mode of filling them, still the result might not be disastrous; because, most of the offices are filled by several; and if one should die, a majority might act; but still it would be an *inconvenience*, which ought not to exist; and it is true also, that *some* of the offices are filled by a single officer. But suppose the fact be, that there is no *express* power in the Constitution for filling such vacancies, does it follow that the *Legislature* has the *inherent* power to fill them? Why the Legislature rather than the Executive? If the Legislature has no power to fill vacancies in other cases, why assume it in this? And if the Governor has the power to fill vacancies in every other case, why deny it in this? If it be a *casus omissus*, and *necessity* implies a power somewhere, it ought to be implied to reside with the general power to fill vacancies—the Governor. But, there is another, and, probably, a better way of meeting the difficulty. A county is a corporation; and, after its officers have been elected by the people according to law, and a vacancy happens which it is *necessary* to fill, it is inherent in the corporation to preserve its own existence; and the electors may fill the vacancy, just as the electors may fill a vacancy in the Legislature. And such legislation as would be necessary to conduct the election, would be legitimate. But it is not in the power of the Legislature itself to fill the vacancies; or to prescribe that they shall be filled otherwise than by the electors; unless the corporate authorities have the *inherent* right to fill the vacancies; in which case appropriate legislation to enable them to exercise their rights would be legitimate. And there is already such legislation.

Our conclusion is, that the Legislature has no power to elect or appoint any officer in the State, except its own officers. Nor has it the power to provide for the appointment, or election, of any officer, whose office now exist, or which may hereafter be created ; so as to take the appointment away from the Governor and Senate, or other appointing power, or the election away from the people. Nor can the constitutional rights of the Governor or the people be evaded by letting the offices to contractors.

The Deaf and Dumb Asylum was one of the public institutions of the State at the time of the adoption of the Constitution in 1868, governed by a Board of Directors. The 14th article, sec. 5, of the Constitution continues them in office until other appointments should be made by the Governor. The Governor made other appointments, who were in office 21st January, 1871, at which time the General Assembly passed an act·abolishing the Board of Directors, and providing for a "Board of Trustees." We assume that the General Assembly had some sufficient reason for changing the *name* of the Board, but it left the Board, the office, to be filled by officers. And then the act proceeded to fill the office with the defendants, and to provide that the Governor should fill vacancies, "subject to the approval of the General Assembly, who themselves shall fill the vacancies, if they disapprove of the appointment made by the Governor."

The question is, had the Legislature the power to fill the office by the appointment of the defendants ? We have already seen that there is no *exprees* grant of the power to the General Assembly. No such grant is to be implied, unless it be in regard to some appointment necessary to the exercise of its legislative functions, as its own officers. And, to make it plain, the power is expressly *prohibited*, Constitution, article 3, section 10. Therefore, the appointment of the defendants was *void*.

It became the duty of the Governor under section 10 to appoint the officers. And if the Senate was in session he ought to have sent the nominations to the Senate, because it was the original filling the office, and not the filling a vacancy, which latter he can do without the Senate. The Governor did not nominate to the Senate, but, as we assume, out of respect for the legislative action, and under a mistake as to his duties, he allowed the office to remain vacant until 1st of March, 1872, after *Clark* v. *Stanly* was decided, when he filled the vacancies caused by his failure to nominate, by the appointment of the relators, whose term of office is limited by the act aforesaid " to 1st January, 1873, and until their successors are chosen."

Regularly, it was the duty of the Governor, on the 1st day of January, 1873, to nominate to the Senate the successors of the relators. And then, the relators would have gone out of office. But their successors were not nominated at that time—the action of the Governor, as we assume, being postponed for this decision as to his powers and duty, and as to the powers of the Legislature over the appointments. Indeed, the Senate was not in session on the 1st of January, 1873, having taken a recess for some weeks. So, the relators' term continued until their successors are appointed.

The Senate being now in session, and the powers of the Executive and Legislative Departments being herein declared; and it being declared that the Governor, by and with the advice of the Senate, has the power of appointment; and it being of great public moment that the offices should be filled according to law; it is to be supposed that the relators' successors will be immediately appointed; and then, their term will end. But all that we can authoritatively *decide* is, that the defendants unlawfully hold and exercise the office of " the Board of Trustees of the Asylum for the Deaf, Dumb and Blind "; and the relators are entitled to hold and exercise said office until their successors are ap-

. pointed according to law.   There will be judgment that the defendants be excluded from said office, and that the plaintiffs recover their costs.   The statute, C. C. P., s. 375, authorizes the Court, in its discretion, to fine each of the defendants a sum not exceeding $2,000.   But, as the defendants went into the office under an act of the General Assembly, we assume that they had no criminal intent, and, therefore, in the exercise of our discretion, and in respect to the General Assembly, no fine is imposed.   See *The People,* &c., v. *Bledsoe* et al., at this term.

There is no error.

PER CURIAM.                    Judgment affirmed.