CLARK, J., dissenting.
This action was brought under a special act of 15 February, 1899, to assert the right claimed by plaintiffs by virtue of the act of 26 January, 1899, abolishing the office of superintendent of the penitentiary and transferring to them the custody, the property and management of the institution from the defendant, who had been appointed superintendent by the Governor.
The defendant resists the demands of plaintiffs, averring that the act of 26 January, 1899, set out in the complaint, is unconstitutional (363) and void, in that its object is to deprive him of his office of superintendent of the State's Prison, and to continue the functions of said office to be performed by others. His Honor sustained the validity of the act and rendered judgment against defendant, who appealed.
This action was brought under section 1 of an act of the General Assembly, ratified 15 February, 1899. The language of the section is as follows: "That in addition to the remedy prescribed by The Code, secs. 603 to 621, inclusive, the board of directors of the State's Prison of North Carolina, or the executive board thereof, or both, with or without the jointure of the State, shall have the right, in an action for injunction ormandamus, to test in the courts the claims of any claimant or claimants to the possession, custody and control of the property of the State's Prison, and of the convicts therein confined."
The object of the statute, then, was simply to have a decision by the courts of this question: Who of the conflicting claimants is or are *Page 255 
entitled by law to the possession and custody of the property (364) of the State's Prison and of the convicts therein confined? The claimants (so far as this record shows) are the plaintiffs on the one side, and the defendant on the other. The rights of any other person or persons that may be connected with the conduct and management of the State's Prison are not now before us for consideration. This Court will not anticipate litigation between rival claimants for office, and if such litigation should occur, each case must be heard and decided on its merits on cases properly constituted in the courts.
The Governor of the State, under the provisions of chapter 219, Laws 1897, appointed John R. Smith superintendent of the State's Prison for the term of four years, and his nomination was consented to by the Senate. The compensation attached to the office was a salary of $2,500. After the adjournment of the General Assembly of 1897 Smith resigned the superintendency, and J. M. Mewborne was appointed by the Governor in Smith's place. On 1 January, 1899, a few days before the General Assembly of that year convened, Mewborne resigned, and the defendant W. H. Day was appointed superintendent to fill the vacancy. Day's nomination by the Governor was never sent to the Senate, nor did that body confirm the appointment. Day, under his appointment, took possession of all the property of the State's Prison, and the control of the convicts. This action was brought by the plaintiffs to recover of the defendant the property in his possession belonging to the State and appertaining to the State's Prison, and to get the control of the convicts and to have the rights of the parties declared. In that way the plaintiffs seek to get a decision by the court on the matter which it was desired to have settled by the act of February, 1899.
The plaintiffs' alleged right of recovery is founded on the provisions of an act of the General Assembly ratified 26 January, 1899, to go into effect on 10 February, 1899, as to its requirement for the delivery of the State's Prison and the convicts therein by the persons then (365) in charge of the State's Prison to the board of directors provided for in the act. As to the other provisions, they went into effect from the date of ratification of the act.
Under the provisions of the last mentioned act the plaintiffs, claiming to be a board of directors, duly elected and appointed by the General Assembly, allege that the office of superintendent has been abolished; that the property of the State's Prison, the control of the convicts and the conduct of the prison were vested in them by the act of January, 1899, and that therefore they are entitled to the possession of the property and the control of the convicts, to the end that they may properly execute their trust. *Page 256 
And again, the plaintiffs allege that if it be so that the office of superintendent was not abolished by the act of 1899, yet the defendant Day's tenure ceased upon the ratification of the act because he was not nominated by the Governor nor his appointment confirmed by the Senate.
The defendant avers that the act of January, 1899, though on its face it purports to abolish the office of superintendent of the State's Prison, does not in law have that effect; that it simply transfers the duties and functions of the office of superintendent to the three plaintiffs, who allege that they compose an executive board, to be performed by them, and that such an attempt to deprive the defendant of his office on the part of the General Assembly is contrary to the provisions of our State Constitution, Art. I, sec. 17 (Bill of Rights), and to those of the Constitution of the United States, Art. XIV, sec. 1. The defendant further avers that the whole act of 1899 is void.
The great public importance of the matter involved and the appearance on both sides of counsel eminent in the profession and learned in the philosophy as well as in the details of the law, naturally (366) prepared the Court for elaborate and discursive argument (oral and by brief), and we were not disappointed in our anticipations.
A great deal of the learning which was displayed, however, was not new. Many of the questions discussed had been so often and so consistently decided by the adjudications of this Court that they could not be held to be open questions, as, for instance, that such a place as that of superintendent of the State's Prison, with its attendant duties, is a public office (Clark v. Stanley, 66 N.C. 59; Hoke v. Henderson, 15 N.C. 1;Wood v. Bellamy, 120 N.C. 212): That an office is property and the incumbent has the same right in it as he has to any other property except that he cannot sell or assign it (Hoke v. Henderson, supra; King v. Hunter,65 N.C. p. 603; Cotton v. Ellis, 52 N.C. 545; Wood v. Bellamy, supra): That the General Assembly has the power to abolish an office created by legislative authority (Cotton v. Ellis, 52 N.C. 545; S. v. Smith,65 N.C. 369; Wood v. Bellamy, supra; Ward v. Elizabeth City, 121 N.C. 1): That the Legislature can, except in those instances prohibited by the Constitution, take away some parts of the duties of an officer and make a not inequitable reduction of the officer's salary (Cotton v. Ellis,52 N.C. 545; Bunting v. Gales, 77 N.C. 383; King v. Hunter, 65 N.C. 603. But in those cases it is also held that the officer's entire salary cannot be taken from him and thereby starve him, nor could the Legislature select a particular officer and by a special law applicable to him alone deprive him of any material part of his duties and emoluments): That the words, in section 10, Article III of the Constitution of 1868, viz.: "That the Governor shall nominate . . and appoint all officers whose offices are established by this Constitution, *Page 257 or which shall be created by law, and whose appointments (367) are not otherwise provided for, and no such officer shall beappointed or elected by the General Assembly," meant appointmentsnot otherwise provided for in that Constitution; and, therefore, the Governor had under that Constitution the general power of appointing to office (the exceptions being in cases where the appointments were otherwise provided for in that Constitution) to the exclusion of the Legislature (McKee v. Nichols, 68 N.C. 429); but, that the words which we have quoted from Article III, section 10 of the Constitution, and which appear in italics in the quotation, being omitted in the present Constitution, it is clear that the Convention of 1875 intended to alter the Constitution as interpreted in McKee v. Nichols, supra, on that point, and to confer upon the General Assembly the power to fill offices created by statute. Ewart v.Jones, 116 N.C. 570.
Having disposed of all the above-mentioned collateral questions which were the subject of argument in the case, interesting more as matters of constitutional and judicial history than as strictly applicable to the controversy before the Court, by the citations of repeated decisions of this Court, we can now come down to the discussion of the point, the real controversy in the case; that is, was the office of superintendent of the State's prison abolished by the act of Assembly ratified January, 1899? We may say in limine that we have had no trouble in arriving at the conclusion that the office of superintendent is not an office created by the Constitution. Section 3 of Article XI of the Constitution ordained: "That the General Assembly shall, at its first meeting, make provision for the erection and conduct of a State's prison or penitentiary," . . . and that provision, in our opinion, imposes upon the Legislature the duty of attending to the details as to the erection of the necessary buildings, the purchase of such property, real and personal, as may be necessary for the uses of the prison; and also to form (368) such regulations for the government and conduct of the prison as may seem proper. The officers or placemen, their salaries and the distribution of their duties are all left with the General Assembly.
On the real question in controversy, the contention of the plaintiff is that the office of superintendent of the prison was abolished by the act of 1899, because (1) The act declared in so many words that the office was abolished; because (2) the responsibility and actual management of the prison are placed upon the board of directors and taken from the one-man power — that of the superintendent, and that the incumbent had an implied notice that the General Assembly might, when it saw fit, take that course; because (3) the act incorporated the State's prison; because (4) it increased the number of directors; because (5) it transferred the duties attendant upon the office to the board of directors for performance. *Page 258 
To aid us in arriving at a correct conclusion in this case a recurrence to the true idea of the nature and character of a public office has been useful to us. In the text-books it is taught that the word office in its primary signification implies a duty or duties, and, secondarily, the charge of such duties — the agency from the State to perform the duties. The duties of the office are of the first consequence, and the agency from the State to perform those duties is the next step in the creation of an office. It is the union of two factors, duty and agency, which makes the office. In Clark v. Stanley, 66 N.C. 59, the Court said that "A public office is an agency from the State, and the person whose duty it is to perform this agency is a public officer. . . . The oath, the salary or fees are mere incidents, and they constitute no part of the office." With that idea, then, of what an office is, has the office (369) of superintendent been taken from the defendant and given to others by the act of Assembly? If the duties of the office were necessary and useful to the public, and they have been transferred to others who are exercising them as still necessary and useful to the public, and the State's prison, in behalf of which those duties are performed, is substantially the same institution as it was before the act of Assembly of January, 1899, was ratified, then, under all the decisions we have cited in this case bearing upon the point, the office of superintendent (defendant's property) has been taken from the defendant contrary to the law of the land — contrary to the provisions of the Constitution of North Carolina, Article I, section 17. If the institution, the State's prison, is the same substantially that it was before the passage of the act, if the purposes for which it was established are the same now as then, and if the subject-matter over which the management and conduct extend be the same, then there is existing a contract between the State and the defendant as to his office, and it cannot be violated during his term. The State, through the General Assembly, might be satisfied that the management under the executive board created by the directors under the act is the better plan and the safer one for the public, yet that is only a matter of method of management, a choice between two modes (that is, whether it is better for three to control than for one), and such a choice cannot be made until defendant's term has expired. A new method of distributing the powers and duties of the government and conduct of the State's prison may be desirable, and the method undertaken to be adopted in the act of 1899 may be the best, and yet such changes cannot be made until the expiration of the contract with the incumbent. It has been suggested that if the State has not the power when it sees fit to abolish an office and transfer its duties to others, that an incumbent might get into an office for a very long term of years (370) (a term not amounting to a perpetuity, however, which would *Page 259 
be illegal), and indifferently execute the duties of the office, but not so poorly as might amount to incapacity, and thereby inflict a great injury on the interest of the public. The answer to that is that if such should be the case it would be the fault of the legislative branch of the government in fixing an unusual term of office, and not a matter reviewable by this Court.
Then, the conclusion of the case turns upon whether the State's prison is substantially the same institution that it was before the act of 1899, whether the purposes for which it was established are the same now as then, and whether the duties performed by the defendant were the same duties substantially which are transferred to board of directors and now being performed by the executive board under the act of 1899.
It is ordained in the Constitution that the State's prison is to be used for the purposes of reformation and of punishment, and that is the object of the institution now. The incorporation of the institution, if it be conceded that it was incorporated by the act of 1899, can in no sense affect the defendant's office if it has not otherwise abolished it. The bare incorporation of the institution would not affect or alter in any way the duties of the superintendent or any other of the officers or placemen or employees. With the exception of the power given in the act of 1899 to the directors to sell or lease the lands or other property of the State's prison, the duties and the powers in all respects of the board of directors, acting through the executive board as their head, are in all respects the same as the duties required of and the powers conferred upon the superintendent under the act of 1897, as the following analysis and comparison will show. Under the various subsections of section 5 of the Laws of 1897, the duties of the superintendent are specified in detail, as follows: (1) Under this subsection he is to receive (371) and to have the custody of the convicts. That responsibility and duty are upon the new board of directors and their agents under section 7 of the act of 1899. (2) Under this subsection it was made the duty of the superintendent to keep employed the convicts in the prison and on the farms, and to hire them to others. Under section 7 of the act of 1899 that duty was devolved on the board and their agents. (3, 4 and 5). Under these subsections the superintendent was authorized and required to purchase necessary articles of food and clothing for the convicts and to employ and take care of them; to sell the products and manufactured articles; to receive and account for the proceeds of sale of articles produced and manufactured, and to make a deposit of the same and to check it out. Those duties are transferred to the board of directors and their agents by section 6 of the act of 1899. (6) This subsection makes it the duty of the superintendent to take custody of the property of the State's prison and to protect the same. This duty is transferred to the *Page 260 
board and their agents by sections 6 and 8 of the act of 1899. (7) The superintendent is authorized under this subsection to appoint the subordinates, such as wardens, physicians, supervisors, overseers, guards and employees. These subordinates, designated under the act of 1899 as wardens, physicians, managers, supervisors or overseers, are to be appointed by the board of directors through the executive board by sections 5 and 9 of the act of 1899. (8) Under this subdivision there is imposed upon the superintendent the duty of rendering at the end of each year to the board of directors a statement of all financial transactions of the State's prison for the preceding year, together with an inventory of all property on hand and its value. Those duties are required to (372) be performed by the agents of the directors, the executive board, under sections 5 and 6 of the act of 1899. Under chapter 219, Laws 1897, the board of directors were a general supervisory power; by the act of 1899 the board of directors through the executive board are clothed not only with a general supervisory authority, but with all the functions and with all the duties of the superintendent and with the power to distribute those functions and duties amongst themselves or others.
If we have not fallen into error in the above analysis and comparison, and we feel confident that we have not, then, no new duties for the government of the State's prison have been imposed, nor have any new powers been granted to any persons except the power granted to the board of directors to sell or lease the land of the State's prison, and which additional power we think does not alter the nature or the character of the institution. No function or duty that was formerly performed or imposed upon the superintendent is abolished. The functions and duties of that office are still necessary to the public welfare. They have not been abolished; they have been simply transferred to others. That cannot be done according to the law of the land. Wood v. Bellamy
and Hoke v. Henderson, supra; Cotton v. Ellis, 52 N.C. 545. That three of the directors have been made the governing head of the institution under the name of executive board, and that to them the duties and functions of the office of superintendent have been transferred, does not change the application of the law. It is the same as if the duties of the office had been transferred to one person. It is not a valid argument to contend that the executive board can conduct the State's prison in a better and more satisfactory manner than can one man. It may be true in point of fact, and that plan can be tried at the end of defendant's term of office. The contract of the State with the superintendent must be kept. In Throop on Public Officers, sec. 21, it is said: "Nor can the Legislature take from the officer the substance of the office (373) and transfer it to another, to be appointed in a different manner *Page 261 
and to hold by a different tenure, although the name of the office is changed, or the office divided and the duties assigned to two or more officers under different names." That principle of law was announced inWarren v. People, 2 Denio, 272, and also in People v. Albertson,55 N.Y., 50. The section in Throop, and the decisions in Warren v. People
and People v. Albertson, supra, are in connection with offices created by constitutional provision. But that makes no difference in North Carolina. Under our decisions, you cannot oust an incumbent of an office and continue the office afterwards, and this rule applies to offices created by the Constitution as well as those created by the Legislature.
It was not necessary for the appointment and nomination of the defendant to have been confirmed by the Senate. There was a vacancy due to the resignation of Mewborne. The Governor never makes a nomination to fill vacancies in office. He does that alone in all cases, as was decided inPeople v. McIver, 68 N.C. 467.
The defendant is entitled to the possession of the property of the State's prison, to the control of the convicts as under the law of 1897, and to the right to execute the duties of the office of superintendent of the State's prison.
REVERSED.