TAYLOR *v.* VANN.

---

## TAYLOR v. VANN.

(November 27, 1900.)

1. *Costs—Appeal—Subject-Matter of Action Destroyed— Appellant—Quo Warranto—Supreme Court.*

   Where the subject-matter of the action is destroyed before the appeal is heard, the judgment below is presumed to be correct until reversed, and no part of the costs should be adjudged against the appellee.

2. *Costs—Subject-Matter of Case Destroyed—Case Settled —Quo Warranto—Supreme Court.*

   The Supreme Court will not determine the merits of a case simply for the purpose of deciding who shall pay the admitted costs.

   CLARK and MONTGOMERY, JJ., dissenting.

CIVIL ACTION, in the nature of *quo warranto,* on the relation of J. C. Taylor against John E. Vann, heard by Judge *A. L. Coble,* on complaint and demurrer, at Spring Term, 1900, of HERTFORD Superior Court. From judgment for plaintiff, the defendant appealed.

*George Cowper,* for plaintiff.
*Winborne & Lawrence,* for defendant.

DOUGLAS, J.   This is an action brought for the recovery of the office of member of the Board of Education of Hertford County.   The plaintiff recovered judgment at April Term, 1900, and the defendant appealed.   The term of office expired by original limitation on the 1st day of July following after the rendition of the judgment, and pending the appeal.   This destroys the subject-matter of the action, rendering futile any further judgment for the plaintiff; and this Court has repeatedly declared that it will not undertake to determine the merits of a case simply for the purpose of deciding who shall pay the admitted costs.   *Herring v. Pugh,* 125 N. C., 437, and cases therein cited.   Therefore, in accordance with the uniform rulings of this Court, long followed, with a single exception, the appeal must be dismissed.   This would seem to end the case, but, as it is strenuously urged that we should dismiss the action itself, we are forced into a further discussion.   The only difference in result would be to tax the plaintiff with the entire costs both here and in the court below.   We do not feel called on to further extend the rule for the simple purpose of taxing the plaintiff with the costs of an action in which he has recovered judgment, and in which at the time of the recovery of such judgment he was clearly entitled to the relief which he sought.   It is true that this Court, in *Colvard v. Commissioners,* 95 N. C., 515, dismissed the action—a proceed-

TAYLOR *v.* VANN.

ing that appears never since to have been followed; but it is significant that in that case this Court decided against the plaintiff on appeal before it dismissed the action. Of course, under such circumstances, there remained no ground on which the plaintiff could claim his costs; and the unusual proceeding of the Court, while questionable in principle, involved no actual injustice. In *Commissioners v. Gill,* 126 N. C., 86, our latest case upon this subject, in which the appeal was dismissed, this Court says: "It is urged that the costs ought to be divided, but the judgment below in favor of plaintiffs is presumed to be correct until reversed, and unless the Court, upon the merits, reverses the judgment below, it can not adjudge any part of the costs against the appelle. Code, secs. 525, 527, 540. * * * He has an unreversed judgment of a court of competent jurisdiction." So has the plaintiff in the case at bar, and, if such a judgment was sufficient to protect the plaintiff from the imposition of any costs in the former case, why is it not equally efficacious in the present case? The principle is the same, and why are not both plaintiffs entitled to its equal application? That the plaintiff had a just and lawful cause of action, not only at the time his action was brought, but also at the time he recovered judgment, can not be denied, if we adhere to the doctrine of *Hoke v. Henderson,* 15 N. C., 1, so recently, repeatedly, and unanimously reaffirmed by us. That this celebrated case was regarded as the settled law for more than half a century is shown by the decisions of this Court cited in *Greene v. Owen,* 125 N. C., 212, and in the concurring opinion of DOUGLAS, J., in *Wilson v. Jordan,* 124 N. C., 707. Contemporary expression will show that it equally received the commendation of the good and great, as being thoroughly consistent with the highest standard of public policy. Governor Graham, in his address upon

TAYLOR v. VANN.

Chief Justice RUFFIN, says: "Judge RUFFIN's conversancy with public ethics, public law, and English and American history seems to have assigned to him the task of delivering the opinions on constitutional questions which have attracted most general attention. That delivered by him in the case of *Hoke v. Henderson,* in which it was held that the Legislature could not, by a sentence of its own, in the form of an enactment, divest a citizen of property, even in a public office, because the proceeding was an exercise of judicial power, received the highest encomium of Kent and other authors on constitutional law; and I happened personally to witness that it was the main authority relied on by Mr. Reverdy Johnson in the argument for the second time in *Ex parte Garland,* which involved the power of Congress, by a test oath, to exclude lawyers from the practice in the Supreme Court of the United States, for having participated in civil war against the government, and in which the reasoning on the negative side of the question was sustained by that august tribunal." An opinion delivered by RUFFIN, and receiving the highest encomium of Kent, Reverdy Johnson, and William A. Graham, is entitled to consideration, even without the unanimous indorsement it received from this Court, as now constituted, in *Wood v. Bellamy,* 120 N. C., 216, and *Ward v. City of Elizabeth City,* 121 N. C., 3. If it was the law then, it is the law now, and the Court that stayed the hand of the Legislature of 1897 is of equal authority to-day. But we are told that in view of the recent decision of the Supreme Court of the United States in the case of *Taylor v. Beckham,* 178 U. S., 548, arising under the Constitution and laws of Kentucky, we should abandon our own convictions, and overrule the uniform decisions of this Court for the past 70 years, in deference to the highest court of the republic. When did courtesy ever go so far?

Moreover, the Supreme Court of the United States has never held or intimated that such was the law in North Carolina. On the contrary, *In Re Hennen*, 13 Pet., 230, it distinctly recognized *Hoke v. Henderson* as a valid construction of the Constitution and law of this State. That Court says, on page 261, 13 Pet.: "The case of *Hoke v. Henderson*, 15 N. C., 1, decided in the Supreme Court of North Carolina, is not at all in conflict with the doctrine contained in the cases referred to. That case, like the others, turned upon the Constitution and laws of North Carolina." It is true, that august tribunal, whose decisions we will always follow when authorities, and most carefully consider when only precedents, differs with us on that point, as a general principle of law, as it does on some other important principles; but that is not sufficient reason for us to disregard our own settled decisions and personal convictions.

Appeal dismissed.

CLARK, J. (dissenting). The plaintiff recovered judgment for the office of member of the Board of Education of Hertford County, at April Term, 1900, of the Superior Court of that county. The term of that office expired on the 1st day of July, 1900, pending the appeal here. This Court could now render no judgment that the plaintiff be admitted to the office, and it has repeatedly held that in such cases it will not go on to discuss a pure abstraction, and determine who would have won if the cause of action had not determined; that it will not decide the merits of an extinct controversy merely to award the costs. In *Colvard v. Commissioners*, 95 N. C., 515, ASHE, J., says: "Suppose there was no error; how could judgment in this case avail the plaintiff? He seeks to be inducted into office by virtue of the writ of mandamus, but what office? Why, that of sheriff

for the term ending on the 4th day of December, 1886. But that time has expired, and a new sheriff has been regularly elected for the term of two years from the 4th day of December, 1886. A judgment, then, in favor of the plaintiff can not be followed by any practical results. If he ever had a right to the remedy he invokes, he has been so unfortunate as to lose it by the law's delay. We are of opinion, for this reason, that the action should be dismissed, and it is so ordered." The same ruling (that the Court will not decide an appeal when the cause of action has become extinct, for any reason, during the appeal) has been held in a uniform line of authorities which are cited in *Herring v. Pugh,* 125 N. C., 437, and reiterated at last term in *Commissioners v. Gill,* 126 N. C., 86. In *Commissioners v. Gill* the County Commissioners brought a summary proceeding against a tenant before a Justice of the Peace for possession of land. It was admitted that the land belonged to the county, but the novel defense was set up that defendant was entitled to possession by virtue of an office of which he had been dispossessed. The Judge below not sustaining this effort to try title to office as a counter-claim in an action before a Justice of the Peace, the county recovered judgment. Pending the appeal, the attempted defense, ceased by expiration of the term of office, and nothing could be done except to dismiss the appeal, there being nothing left to be decided. In this case it is the plaintiff's cause of action which has expired pending appeal, and hence the action must be dismissed, unless we reverse all the precedents, and try the merits of a dead cause, and determine who would have won if the cause of action had not died, merely to settle who shall pay the costs. Whether the plaintiff might not have joined a cause of action for fees and emoluments (see *Mc-Call v. Webb,* 126 N. C., 760), which cause of action might

have survived notwithstanding the termination of the office sued for, is a question not presented by the record.

The doctrine of *Hoke v. Henderson* has been greatly expanded by this Court since January, 1899, but never till now was it held to apply to a matter of costs, nor has it been deemed so sacred that other and well-considered decisions shall be overruled, should it be deemed that even indirectly they impinge upon the new breadth given that case. In its original restricted limits, that case was based upon a construction of the clause of the Federal Constitution which forbids the impairment of the obligation of a contract. The construction placed by the United States Supreme Court upon the United States Constitution is binding upon all, and that high tribunal, in the very recent case of *Taylor v. Beckham,* 178 U. S., at pages 576, 577, cite the uniform rulings of that Court, notably, *Butler v. Pennsylvania,* 10 How., 402, 416, and *Crenshaw v. U. S.,* 134 U. S., 99, "in which latter case," the Court says, "Mr. Justice LAMAR stated the primary question in the case to be 'whether an officer appointed for a definite time or during good behavior, had any vested interest or contract right in his office, of which Congress could not deprive him;' and he said, speaking for the Court, 'the question is not novel. There seems to be but little difficulty in deciding that there was no such interest or right.' *Butler v. Pennsylvania, supra; Newton v. Commissioners,* 100 U. S., 548; *Blake v. U. S.,* 103 U. S., 227, and many other cases. The decisions are numerous to the effect that public offices are mere agencies or trusts, and not property, as such. Nor are the salary and emoluments property, secured by contract, but compensation for services actually rendered. Nor does the fact that a constitution may forbid the Legislature from abolishing a public office or diminishing the salary thereof during the term of the

incumbent, change its character or make it property. True, the restrictions limit the power of the Legislature to deal with the office, but even such restrictions may be removed by constitutional amendment. In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right." There can be no higher authority as to rights or immunities claimed under the Federal Constitution than the decisions of the United States Supreme Court. *Hoke v. Henderson* rests upon the doctrine that a public officer has contract or property rights in his office, which are protected against legislative action by the clause of the Federal Constitution which forbids the impairment of the obligation of contracts. The above explicit statement in the latest case (*Taylor v. Beckham,* 178 U. S., at page 577), reciting the uniform decisions of the highest United States court, and reiterating them, that the nature of a public office is "inconsistent with either a property or contract right" therein by the officer, necessarily puts an end to any right claimed under *Hoke v. Henderson.* It is henceforward a derelict floating upon the ocean of jurisprudence, and to be avoided. The opinion in *Taylor v. Beckham* was filed May 21, 1900. Though there are some dissents, there is none as to the proposition above cited. In our own courts every Judge who took his seat upon the bench in 1868, necessarily negatived the doctrine of *Hoke v. Henderson,* since they recognized thereby the validity of the action of the convention in vacating the life-judgeships held by their predecessors, which the convention could not do if those offices were contracts. In *Ward v. City of Elizabeth City,* 121 N. C., 1, the Court, composed of the same judges as now, denied the application of *Hoke v. Henderson* to the facts of that case, and said, "This is the only State of the

45 which sustains that doctrine;" *i. e.,* of contract or prop-
erty rights in an office. In *State v. Wilson,* 121 N. C., at
page 467, DOUGLAS, J., says: "With the exception of this
State, it is the well-settled doctrine in the United States that
an office is not regarded as held under a grant or contract,
within the constitutional provision protecting contracts."
And further on he says: "Throop,Pub. Off.,sec. 19, citing 92
decisions from the United States Supreme Court, and 32
different States; also, Black, Const. Law, p. 530, and cases
cited: Mechem, Pub. Off., secs. 463, 464, citing numerous
cases—says that, except in North Carolina, it is well settled
that there is no contract, either express or implied, between a
public officer and the government, whose agent he is, nor can
public office be regarded as the property of the incumbent."
And on page 468, 121 N. C., at page 561, DOUGLAS, J.,
further says of *Hoke v. Henderson:* "The fact that we are
the only State in the Union recognizing the doctrine may
well cause us to pause and consider if we have not carried
it to the fullest legitimate extent. It may be doubted if
the great Chief Justice ever contemplated the extent to which
it would be carried." But since that decision the doctrine
has been carried to a still greater and most unexpected ex-
pansion by *Day's Case,* 124 N. C., 362; *Wilson v.
Jordan,* 124 N. C., 683, 33 S. E., 139; *White v. Audi-
tor,* 126 N. C., 570, and numerous other office cases. The
"92 decisions from the United States and 32 State Supreme
Courts," cited by DOUGLAS, J., as holding that there is no
property or contract rights in a public office, have been in-
creased in number since, and still without any case to sup-
port *Hoke v. Henderson.* It is unnecessary to cite them,
especially as the utterance of the United States Supreme
Court, in *Taylor v. Beckham,* has given the *coup de grace* to
*Hoke v. Henderson,* even in its comparatively modest limits,

before it was extended by the recent cases in this Court. But it may be interesting and instructive to cite a few of the comments passed upon *Hoke v. Henderson,* by the highest courts of our sister States. The Supreme Court of South Carolina, in *Alexander v. McKensie,* 2 S. C., at page 92, after laying down the doctrine that the Legislature may at will "remove the incumbents of offices created by the Legislature, and put others in their place," says: *"Hoke v. Henderson,* 15 N. C., 1, holds the contrary doctrine, but is without the support of reason or authority." The Supreme Court of Kentucky, in *Standeford v. Wingate,* 2 Duv., at page 448, says: "Within the range of our researches, the only adjudged case which could give any countenance to such an unreasonable doctrine is *Hoke v. Henderson,* 15 N. C., 1. * * * That anomalous decision is not, in our opinion, sustained by consistent argument, which, with all proper respect, we regard as, in principle, a *felo de se,* even under the Constitution of North Carolina." In *Conner v. Mayor,* etc., 2 Sandf., at pages 373, 374, the Court says: "The North Carolina case (*Hoke v. Henderson*) stands out in strong contrast to every public decision and opinion on the subject which we have seen"—and accounts for the anomaly thus: "It appears to us, with much respect for the learned tribunal which pronounced this judgment, that it was unduly influenced by the common-law rule, derived from prescriptive offices, and operating in a government whose genius and spirit are perhaps in no respect more unlike ours than in this very subject—the source and nature of the rights and interests acquired by public offices." In 25 Am. Dec., at page 704, the learned annotator, Judge Freeman, annotating *Hoke v. Henderson,* says: "Such a doctrine would certainly receive countenance nowhere else. * * * With all deference to the North Carolina courts, the conclusion

may yet be drawn, with Mr. Pomeroy (Const. Law., sec. 553), that 'it may therefore be considered as a settled point of constitutional law—settled both by the national and State courts—that a public office bears no resemblance to a contract, and that Legislatures have full power over the public offices of a commonwealth, except so far as they are restrained by the local Constitutions. The clause of the United States Constitution which prohibits State laws impairing the obligation of contracts has no application whatever to this subject.' " The list of similar criticisms might be greatly extended. *Hoke v. Henderson* was launched in 1831— nearly seventy years ago. In all that time it has received no approval from any other court, and has been treated as an alien by the judicial mind in all the State and Federal courts. After the recent clear enunciation of the United States Supreme Court, in *Taylor v. Beckham, supra, Hoke v. Henderson* should, in judicial subordination to the paramount authority of that court, in construing the United States Constitution, be held of no authority here; for it is the clause of the United States Constitution, and not any provision of the State Constitution, which has been invoked to set aside the action of the Legislature in dealing with the agents of the State, created by a previous Legislature. It is small off-set against this consensus of judicial authority to array the eulogistic remarks of counsel, quoted by one of our citizens in an obituary address in honor of his friend, the venerated and distinguished Chief Justice, whose error in delivering the opinion in *Hoke v. Henderson* is no blot on his fame; for, like all great Judges, he sometimes erred. A reference to *Ex parte Garland,* 4 Wall., 333, shows that *Hoke v. Henderson* is not referred to by the Court, nor in fact in the brief of that counsel, which is published in full; and nothing in the opinion militates against the rule laid down

in *Taylor v. Beckham* as the uniform ruling of that court, which is that an office is a public agency, in which the office-holder has neither property, nor contract rights. If, as in *Commissioners v. Gill, supra,* the defense set up by confession and avoidance, had terminated pending the appeal, the appeal by defendant would be dismissed. But here it is the plaintiff's cause of action which has ceased, pending the appeal, and to dismiss the appeal would be to affirm, against the defendant (appellant), judgment to recover an office which has ceased to exist, and costs. To do the latter, we must overrule our uniform decisions that when the cause of action dies pending an appeal, the Court will dismiss the action, and will not go on to determine which side "would have won if the cause of action had not died," merely to adjudicate the costs. But, should we overrule the line of decisions to above purport, still, in deference to the highest court of the republic, we should dismiss this action, for no cause of action is stated in the complaint.

MONTGOMERY, J., dissents from the opinion of the Court. He regards the point involved in this case as having been settled adversely to such a claim as the plaintiff's in the cases of *Colvard v. Commissioners,* 95 N. C., 515; *Herring v. Pugh,* 125 N. C., 437, and *Commissioners v. Gill,* 126 N. C., 86.