# The Commonwealth *versus* Gamble.

| 62 | 343 |
|----|-----|
| 128 | 336 |
| 62 | 343 |
| 163 | 286 |

1. A judge having been elected and commissioned is by the constitution to continue in office ten years, if he shall behave himself well; its duration is assured to him subject to be determined only by death, resignation or breach of the condition.

2. Such breach cannot be determined by the legislature, but only on trial by the Senate on impeachment, or in case the breach amounted to total disqualification perhaps by address of two-thirds of each branch of the legislature.

3. A legislative act which impinges on the tenure of judges is invalid.

4. The power and jurisdiction of a judge constitute the office, are of the essence of it and inseparable from it.

5. This grant of power is incapable of any limitation but that attached to it.

6. The aggregate amount of the duties of a judge in any district may be diminished by the division of his district or by the election of an assistant.

7. Constitutional grants imply a prohibition of any limitation or restriction by legislative authority.

8. Respublica *v.* McClean, 4 Yeates 399, examined.

July 1st. 1869, at *Philadelphia*. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

QUO WARRANTO. An information was filed in the Middle District, No. 80, to May Term 1869, by the Attorney-General, April 5th 1869, setting out that James Gamble had, since March 16th 1869, and still did exercise, the office, &c., of a judge of the Court of Common Pleas of Lycoming county. Upon the suggestion of the Attorney-General the writ in this case was issued, to which the defendant pleaded, that by the Act of February 28th 1868 the county of Lycoming was erected into a separate judicial district, called the Twenty-ninth Judicial District; that by said act the qualified electors of the district were authorized to elect a president judge for said district, to serve for the term of ten years from the first Monday of December then next; that the defendant was, on the second Tuesday in October 1868, elected president judge of said district, to serve for the term above mentioned, was commissioned by the governor of the Commonwealth, took the oath of office and has since continued to exercise it by virtue of the election and commission.

To this plea the Commonwealth replied, that an Act of Assembly, approved March 16th 1869, repealed the Act of February 28th 1868, and attached the county of Lycoming to the Fourth Judicial District and it now forms part of it,—and that the respondent therefore had no right to exercise the office of judge, &c.

The defendant demurred to the replication, and the cause was heard on the demurrer.

*Strong* and *Meredith* (with whom was *Black*), for the defendant.—The defendant, prior to the passage of the repealing

[Commonwealth *v.* Gamble.]

act, was constitutionally the president judge of the Court of Com·
mon Pleas of Lycoming county.   That assured him the office for
ten years and placed him beyond legislative control: Common-
wealth *v.* Mann, 5 W. & S. 403.   The Act of March 16th 1869
conflicts with this.   His right was to exercise a public employment
as well as receive the salary: Finch 162; 3 Kent's Com. 154;
Answer of the Judges, 2 Greenl. R. 481; People *v.* Bangs, 23 Ill.
547; People *v.* Garey, 6 Cowen 642; s. c. 9 Id. 640; McCol-
lum's Case, 1 Id. 550; State *v.* Messmore, 14 Wis. 163.   The
Act of 1869 is an attempt to reorganize a court, and cannot as
such be sustained.   The gift of power to remove a judge by im-
peachment or address excludes power to remove in any other
manner; Lowe *v.* Commonwealth, 4 Metc. (Ky.) 237; Common-
wealth *v.* Sutherland, 3 S. & R. 145; Hoke *v.* Henderson, 4 Dev.
1; Page *v.* Hardin, 8 B. Monroe 648.   The act denies the power
of Lycoming county to choose their own judges.   They cited also
3 Cruise's Dig. 92, *Office*, pl. 1.

*S. G. Thompson* and *B. H. Brewster*, Attorney-General, for
Commonwealth.—The Act of 1869 has the sanction of judicial
authority and· legislative practice.   (They cited a large number
of Acts of·Assembly organizing, changing, &c., judicial districts.)
A law will not be declared unconstitutional unless the violation
is plain, clear and palpable: Sharpless *v.* The City, 9 Harris 164;
Speer *v.* School Directors, 14 Wright 156; Livingston *v.* Moore,
7 Peters 469; Falconer *v.* Campbell, 2 McLean 195; Tracy *v.*
Pendleton, 11 Harris 171; Resp. *v.* McClean, 4 Yeates 399.   The
legislature can pass all laws not prohibited: 2 P. F. Smith 474.
The legislature has power to alter the structure of courts: Com-
monwealth *v.* Martin, 2 Barr 244; Bank of Kentucky *v.* Schuyl-
kill Bank, 1 Pars. R. 181; Foust *v.* Commonwealth, 9 Casey 339;
Kilpatrick *v.* Commonwealth, 7 Id. 211; Livingston *v.* Moore,
*supra;* Brien *v.* Commonwealth, 5 Metc. 516; People *v.* Kane,
23 W,end. 414; Clark *v.* Commonwealth, 5 Casey 137.

Judgment was entered against the Commonwealth July 3d 1869,
no opinion being then delivered.

The opinion of the court was delivered, October 19th 1869, by
THOMPSON, C. J.—On the 28th of February 1868, Lycoming
county being part of the Eighth Judicial District of the Common-
wealth, was by Act of Assembly of that date, erected into a new
district, to be called the Twenty-ninth, and afterwards, at the
ensuing general election, the respondent, James Gamble, was
duly elected, and subsequently commissioned, as president judge
of the district, took the oath of office and entered upon the per-
formance of his duties as judge of the courts in it.

[Commonwealth *v.* Gamble.]

On the 16th of March 1869, an Act of Assembly was passed and approved by the governor, repealing the above act creating the Twenty-ninth District, transferring it to and constituting it part of the Fourth Judicial District, in which the Hon. Robert G. White is president and Henry W. Williams is assistant law judge. The respondent, being of opinion that the act was invalid, and considering it his duty so to treat it, continued to discharge the duties of president judge of the district; whereupon, the Attorney-General, in the name of the Commonwealth, sued out a writ of *quo warranto*, to test the right of the respondent to exercise the jurisdiction and perform the duties and functions of judge of the courts of the district;—and this brings before us the inquiry, whether the legislature had the power to deprive him of *all* jurisdiction and power under his commission, granted in pursuance of the Constitution, and to transfer the exercise of the same to other judges, neither elected nor commissioned for that purpose. The essence of the inquiry under the facts is, whether the legislature, by a mere legislative act, can remove a judge from the exercise of the duties and jurisdictions of his office, and appoint another, or others, to fill his place?

Pursuant to his election, Judge Gamble received a commission from the governor, the tenure of which was, by the Constitution, to continue for ten years, on the only condition that he should so long "behave himself well." Having taken the office and entered upon the performance of its duties, its duration was assured to him by the Constitution for the full period mentioned, subject to be terminated only by death, resignation or breach of condition, which breach could not be legislatively determined, but only by a trial before the Senate on articles of impeachment duly preferred, or in case the breach amounted to total disqualification, perhaps by address of two-thirds of each branch of the legislature. These are the ordained constitutional remedies in such cases, and there can be no others: Lowe *v.* The Commonwealth, 4 Metc. (Ky.) Rep. 237.

These constitutional provisions, and another requiring that adequate compensation shall be provided by law for the judges, which shall not be diminished during the continuance of their offices, not only give precision, but inviolability, to the tenure of the judicial office, by any but the constitutional mode referred to. Their object and effect were undoubtedly to establish the complete independence of the judiciary, not only in its operations among the people, but as against possible encroachments by the other co-ordinate branches of the government. Possessing neither the power of the purse nor the sword, as the executive and legislative branches, without using the expression in an entirely figurative sense, may be said to do, the judiciary was by far the weakest branch of the government; and as its operations were

[Commonwealth *v.* Gamble.]

necessarily to affect individual interests in the community, it was obviously proper, in order to secure its independence against the action of the other branches more liable to be swayed by impulse, or operated upon by individual, party or sectional influence, to protect it by express constitutional barriers; and it was so done. Nowhere is this, as an essential principle of the Constitution, better expressed than by Rogers, J., in The Commonwealth *v.* Mann, 5 W. & S. 403. Among other remarks of the learned judge, are the following: "The independence of the judges is equally requisite to guard the Constitution and rights of individuals from the effect of those ill humors which the acts of designing men, or the influence of particular conjunctures, sometimes create among the people themselves, and which, although they speedily give place to better information and more deliberate reflection, have a tendency, in the meantime, to occasion dangerous innovations in the government, and severe oppression of the minor party in the community."

An independent judiciary must ever be a cardinal principle of constitutional government. It was adopted in forming the Federal Constitution, both in regard to the express tenure of the office, and in providing a fixed compensation, undiminishable during the continuance of the office. And so in every state in the Union, this independence is secured, during the tenure of the office, by constitutional provisions, and judges are made secure from interference from any quarter, with the exercise of their jurisdiction and powers, excepting in the modes prescribed in the several constitutions. These provisions were not the result of a wise philosophy or far-seeing policy merely. They resulted, rather, from severe trials—experience—in the country from which we have largely derived our laws and many of our principles of liberty. History has preserved numerous melancholy examples of the want of a judiciary independent by law, before it was accomplished in England. The tyrannical reigns of Charles II. and James II. are so full of them, that the revolution of 1688 could scarcely have been other than a consequence of them. A short time after the revolution, and by the English acts of settlement, it was declared that the salaries of the judges should be ascertained and established by law; and by statute 1 Geo. III. they were secured absolutely during the commissions of the judges, which are for life, on the same condition as ours—of good behavior. We must regard this as a clearly established principle of our Constitution. The judicial office is created by the Constitution and so is its tenure, and the compensation is protected by it when once fixed by the legislature. The amenability of the judges is also provided for, and this excludes all other modes. Thus is independence supposed and intended to be secured by the Constitution. It must follow, therefore, that any legislation

[Commonwealth *v.* Gamble.]

which impinges on this feature of the Constitution is invalid. Not only was the judiciary thus made independent, but, as a co-ordinate branch of the government, its protection and existence were supposed to be completely assured.

Could the principle of the independence of the judiciary, and, at the same time, its integrity as a co-ordinate branch of the government, have been more effectually assailed than by the passage of the act repealing the Twenty-ninth Judicial District, and its transfer bodily to another district, and to other judges? Even if the commission might, for compensation, endure after all power and every duty under it had ceased, a result I do not admit, the act was not the less destructive of the principle of independence with which it was the purpose of the framers of the Constitution to invest the judges. What could be more destructive to all independence of action of a judge, than the momentary liability, during the recurring sessions of the legislature, to be dismissed from the exercise of the functions of his office by the repeal or abolition of his judicial district? If all the while he must be conscious that he exercises the powers and authority conferred by his commission only by the forbearance of the legislature, although it might be possible that independence of action might still exist, it would be an exception; as a rule, it would be a myth. Such a state of things as would follow a rule, the result of affirming the constitutionality of the act in question, would be utterly subversive of the independence of the judiciary, and destructive of it as a co-ordinate branch of government. The case of the Twenty-ninth District this year might become that of any, or half the other twenty-eight districts next year, for reasons quite as legitimate as those operating to procure its repeal. Establish this power in the legislature, and it will be as easy, as it will be common, for powerful corporations and influential citizens to move the legislature to repeal districts, and supersede judges who may not be agreeable to their wishes and interests, and transfer their business to other jurisdictions supposed to be more favorably inclined. This would be destructive of all that is valuable in the judicial office, and preservative alone of those evil qualities which flow from a subverted and subservient judiciary. I think in this state there has never been known a more palpable and direct blow at one co-ordinate branch of the government by the others, or one so destructive of the uses for which it was established, as is contained in this act, though undesigned, we must believe. If there were no special reasons for holding it unconstitutional, these general views would require it so to be held.

But to be more special in reasons for holding the Act of the 16th of March 1869 invalid, it must be regarded as an attempt substantially to abolish the office of the president judge of that district. The Constitution, after providing for the election and

[Commonwealth *v.* Gamble.]

commissioning of judges, fixes the tenure of their offices by providing that "The president judges of the several Courts of Common Pleas, and of such other courts as are or shall be established by law, and other judges required to be learned in the law, shall hold their offices for the term of ten years if they shall so long "behave themselves well." Judge Gamble's commission had nine and two-thirds years to run, when the act in question was passed. By the express terms of the condition it was inviolable by any authority for any other cause during this period than a breach of the condition, in the commission, for good behavior; and, as already said, that could be redressed only by impeachment, or on address by the legislature. This is the mode fixed and ordained by the Constitution, and is utterly incapable of being supplied or supplemented, directly or indirectly, by legislative action.

The commission which was issued to Judge Gamble, by authority of the Constitution, if in the usual form, and we may presume it was, granted to him the "right and title to have and to execute all and singular the powers, jurisdictions and authorities, and to receive and enjoy all and singular the emoluments to the office of president judge of the Conrt of Common Pleas of the said Twenty-ninth Judicial District, lawfully belonging or in anywise appertaining by virtue of the laws of this Commonwealth, if he shall so long behave himself well." The commission authorized by the Constitution to be issued, contains an express grant of authority to exercise the powers and jurisdictions of a judge during the full period of its existence, subject only to the condition of good behavior. These powers, authority and jurisdiction constitute the office, and are of the essence of it, and inseparable from it, and are granted to be exercised for the period of ten years, subject to the condition mentioned. This is a constitutional grant of the right to exercise the powers and authority belonging to the office of president judge, and is incapable of any limitation but that attached to it. If this were not so, and it might be changed by legislative action, then would the authority of the Constitution be subject and subordinate to legislative authority—a position not to be entertained for a single moment, especially when it is remembered that what the Constitution itself ordains, is so much of the sovereign power withheld from the legislative power. I of course do not doubt, but that the aggregate amount of the duties of a judge in any given district may be materially diminished by a division of his district, or by the election of an assistant. But that grows out of a power to reorganize or regulate the courts—a power not withheld by the Constitution, leaving the authority and jurisdiction pertaining to the office intact; and is quite a different thing from taking them away *in toto*. Their extent may, it is admitted, be changed, increased or diminished by a reorganization of the courts. This is an express provision.

[Commonwealth v. Gamble.]

of the Constitution, and a condition to which the office is necessarily subject. With these exceptions no other legislative interference is legal or constitutional. The grant and tenure of the office of judge are fixed by the Constitution, and are necessarily an implied prohibition of all interference with it, in these particulars, by any other authority. In McCafferty v. Guyer, 9 P. F. Smith 109, this court held that any right defined by the Constitution is "in the nature of a constitutional grant, and cannot be taken away by any authority known to the government. It involves a prohibition of interference with it." If this doctrine be true, and there cannot be a doubt about it, an attempt to take away the authority and jurisdiction of a lawfully commissioned judge, can be nothing short of an effort to change by Act of Assembly that which is ordained by the Constitution. But that the legislature must act in subordination to the Constitution needs no argument to prove, and that it does not do so if it attempt to circumscribe the powers of a constitutional office during its continuance, or to limit its constitutional tenure.

It seems like a solecism to regard that to be an office in this country, to which there are no duties assigned. "An office," says Kent, vol. 3, p. 454, "consists in a right and correspondent duty to execute a public or private trust, and to take the emoluments." To the same effect are Cruise's Dig. vol. 3, p. 117, and Bouv. Law Dict. *Verbum* "Office."

There is no doubt but the post of a president judge is an office. It is not only within the common-law definition quoted, but is expressly so designated in the Constitution. It seems to me that it could not be maintained for a moment, therefore, that a president judgeship, created without any duties to be performed, or authority to be exercised, would not be an office in the sense of the Constitution, or at common law, as applicable to this country; if so, by parity of reason, it would cease to be such if its duties and authorities are all taken away. Now the Constitution ordains that the office of president judge shall continue for ten years, and this fixes inevitably the duration of the authority and powers which constitute it an office. They are inseparable; and it establishes that the legislature, by an ordinary act of legislation, cannot take them away during the lifetime of the commission. It is sometimes asserted, but I think without due reflection, that a judge's commission will remain although all his powers and jurisdictions may be taken away. If this were so, judges without districts might come in time to be as numerous as barristers without briefs are said to be. The tenure of the office does not rest on contract but on the Constitution: Commonwealth v. Mann, *supra*, and is not protected by the Constitution of the United States, which prohibits impairment of contracts. It conserves the Constitution to occupy this view of the principle, which we think

incontrovertible, that constitutional grants imply a prohibition of any limitation or restriction by legislative authority.

I see not how, for another reason, that the commission of a president judge could. exist after the total abolition of his district. Every judge is elected in and for a district defined and fixed by law, and then he is commissioned, and is required by the Constitution to reside within the district. It seems to me it would be a logical conclusion to hold that if no district exists to which the commission could apply, and in which the judge would be bound to reside, that there could not exist a commission for any purpose. This, I think, would be the inevitable deduction from such premises ; and it would therefore follow that if the legislature could blot out a district, it could limit the duration of the commission granted to a less period than ten years, if it might so choose. That it cannot shorten the tenure of the office of a judge as fixed by the Constitution is certain, and this ought to establish that it can pass no act to do by indirection that which may not be done directly.

Notwithstanding the constitutional provisions referred to, the legislature has not only attempted by the Act of Assembly in · question to expel Judge Gamble from his district, but in fact has appointed other judges to hold the courts therein, who were neither elected nor commissioned for that purpose. The legislature has undeniably by this Act of Assembly assumed both the power of appointment and removal of the judge for this district. The act displaces Judge Gamble as the president judge, and appoints Judge White and his law associate to hold the courts therein. If such a thing can be done in one district, it may be done in all, and thus not only would the independence of the judiciary be destroyed, but the judiciary, as a co-ordinate branch of the government, be essentially annihilated.

Something of this kind was tried in Illinois, but came to nought when examined in the light of constitutional law by the courts. There, as in the case we have here, a district was by act of the legislature, absorbed in a new one, and for it a judge was elected and commissioned. I refer to the People *ex rel.* Ballou *v.* Dubois, 23 Ill. 547. In that case it was held by the Supreme Court of Illinois, that although the erection of new judicial districts was expressly authorized by the Constitution, yet no new district could be created by which the judge in commission could be deprived of a right to exercise the functions of his office during the continuance of his commission. In delivering the opinion of the court, Caton, C. J., said—" The question is, can the legislature expel a circuit judge from his office by creating a new district, taking from him the territory which constituted his district ? The bare reading of the Constitution must convince every one that it was intended to prohibit such a proceeding." (The con-

[Commonwealth v. Gamble.]

stitutional provision alluded to is—"The state shall be divided into nine judicial districts, in each of which one circuit judge shall be elected by the qualified voters thereof, who shall hold his office for the term of six years, and until his successor shall be commissioned.") "It was," says the learned judge, "the intention of the Constitution to place the judges entirely above and beyond the legislative control or interference except by impeachment or address. * * * * It is the Constitution which creates the office of circuit judge, and not the legislature. All the latter can do is, to create new judicial districts; the Constitution in advance creates the office of circuit judge for such district." The conclusion of the court was unanimous, that by the creation of a new judicial district, an existing one could not be absorbed, and the judge in commission superseded in the discharge of his official duties. To the same effect is The State v. Messmore, 14 Wisc. 163, in which is to be found a most able and exhaustive opinion by Dixon, C. J., upon a state of facts raising mainly the question in this case, and on the effect of the repeal and creation of new judicial districts upon existing commissions. The learned judge makes use of this emphatic language:—"And here we may say, what is in fact applicable to another branch of the case, that we wholly reject the other exposition of the defendant's counsel, upon which it was claimed that by virtue of the power of increase and alteration, jurisdictions and judgeships are made itinerant and wandering in their nature; that a circuit may be entirely shifted from the district or territory for which it was created, and judges assigned to places outside the jurisdictions for which they were chosen; or, as was said, left no jurisdiction, and no mark of office save the name and salary. That this would be contrary to the spirit and intention of the framers of the Constitution is manifest, from every provision on the subject." This is a substantial statement of the question before us, and the conclusion of the court in that case was against the attempt to absorb a judicial district by the erection of another, and fully sustains the conclusion arrived at in this case.

The case principally relied on by the learned counsel for the Commonwealth in their argument, is Respublica v. McLean, 4 Yeates 399. That was an early case affecting a justice's commission, and was ruled by a divided court consisting of three judges; C. J. Tilghman and Breckenridge, J., holding, although for different reasons, that the commission of the justice ceased by reason of that portion of the county in which he resided, and for which he was commissioned, being set off and forming a portion of a new county. Yeates, Justice, held the contrary. It would have greatly retarded the improvement of the state, if new counties could not have been formed out of the territory of the large counties originally established, some of them extending in length

and breadth over more than 150 miles, because of the existing commissions of the magistrates in the old counties.   On the other hand, it was not easy to hold that the commission continued in force in a county for which it was not issued.   On these conflicting positions of the laws and obvious interests of the state, that decision was made.   We do not think it rules this case by any means, because of the essential differences between it and the present circumstances in fact and law.   A similar case cannot arise, I presume, under the Constitution of 1838, which provides for the election and commissioning of justices of the peace for townships, wards and boroughs.   It is probable that, if a township were set off to a new county, the commission of the justice would legally remain in force.   That was the determination of the Supreme Court of New York in 1823 in Ex parte McCollum, 1 Cowen 550.   We make no decision of this point, however.   We only mean that we are not bound to decide for the Commonwealth in this case on account of anything contained in Respublica *v.* McLean.

The last remark to be made in this case is, that the election by the people of a judge of a district established by law, cannot be set aside by transferring the district to another district and a judge not elected by them.   The provision of the Constitution art. 5, sect. 2, is, that—" The Judges of the Supreme Court, of the several Courts of Common Pleas, and of such other courts of record as are or shall be established by law, SHALL be elected by the qualified electors of the Commonwealth in manner following :"—Amendment of 1850.   Then follows the provision for the election of the Supreme Judges by the electors of the Commonwealth at large, and of the Common Pleas and other judges of courts established by law, by the electors of the respective districts of such courts.

It is obvious that this secures to the electors of every judicial district, the right to choose their judges.   And it is equally certain, that if, after an election, the legislature may transfer and make the district part of another district where the inhabitants have had no participation, or chance of participation, in the election of the judge thus assigned to preside over them, that such an act would utterly ignore the provision of the Constitution, which provides for the election of judges by the electors of the respective districts.   This would be the legitimate consequence of holding the act under consideration, or any similar act, to be constitutional.   No election can take place, in the district to which the Twenty-ninth is attempted to be transferred, for several years.   During all that time the inhabitants of the Twenty-ninth District will be deprived not only of the judge elected by them, but will be presided over by two judges, neither of whom have they ever had any part in electing.   If this may be

[Commonwealth v. Gamble.]

done in this instance, it may be repeated, and Lycoming be again, after a time, transferred to some other district, in which no election is to take place for another term of years; and so it might be transferred from time to time indefinitely, without ever exercising the right of participating in the election of a judge at all; and this may occur as well, in any other district, or to any other county forming a single district. All such legislation must be utterly void, if the constitutional provision for the election of judges be of the slightest consequence.

For these reasons, therefore, and others which might be given, we hold the Act of Assembly of the 16th of March, so far as it respects the act establishing the Twenty-ninth Judicial District and transfers it to the Fourth District, to be unconstitutional and void, and of no effect in superseding the exercise of judicial functions, and jurisdiction by the respondent Judge Gamble. The judgment heretofore entered in this case is fully sustained, we think, by the reasons now assigned, as well as others which might be assigned in addition thereto.

READ, AGNEW and WILLIAMS, JJ., did not concur in so much of the foregoing opinion as relates to the election of judges by the people; believing it unnecessary to the decision, and desiring to be left unfettered by any expression of opinion on that subject, when the question of a transfer of a county from one judicial district to another shall arise.