## W. A. ELIASON v. THADDEUS COLEMAN.

*Office and Officer—Chief Engineer of Railroad.*

The office of chief engineer of the Western North Carolina railroad is not a public office. The true test of a public office is, that it is parcel of the administration of government, civil or military, or is itself created directly by the law-making power ; and an information in the nature of a *quo warranto* only will lie to recover the same.

(*Ellis* v. *D. D. & B. Inst.*, 68 N. C., 423 ; *Norfleet* v. *Staton*, 73 N. C., 546 ; *Patterson* v. *Hubbs*, 65 N. C., 119 ; *Clark* v. *Stanley*, 66 N. C., 59 ; *Howerton* v. *Tate*, 68 N. C., 547 ; *Nichols* v. *McKee*, *Ib.*, 429 ; *Welker* v. *Bledsoe*, *Ib.*, 457 ; *R. R. Co.* v. *Davis*, 2 Dev. & Bat., 451, cited, commented on and approved.)

CIVIL ACTION tried at Fall Term, 1881, of IREDELL Superior Court, before *Seymour, J.*

This action is brought to recover so much of the salary of the chief engineer of the Western North Carolina railroad company as was received by the defendant for services while in possession of the office and in discharge of its duties, for the period immediately preceding his retirement therefrom in June, 1872. The company was organized under an act of the general assembly passed in 1855, the substance of which, so far as it affects the present controversy, may be thus summarily stated : The management of the affairs of the company is committed to a general board consisting of twelve directors, of whom eight were to be appointed by the Governor with the advice and consent of the senate, and the others elected by the individual stockholders. The directors who must be citizens of the state and resident therein, and also hold each at least five shares of the capital stock, are required to elect one of their number president of the company. Contracts authenticated by the president and secretary of the board of directors are made binding upon it· With the exception of the commissioners designated by name to open books of subscription to the capital stock, no other officers of the corporation are created or expressly recognized in the act. Acts 1854–'55, ch. 228.

The concluding paragraph of section 6 confers among other rights and immunities the authority to "make all such by-laws, rules and regulations, as are necessary for the government of the corporation, or for effecting the object for which it (the company) is created, not inconsistent with the constitution and laws of the state."

At a meeting of stockholders held in August, 1869, an or-dinance or by-law was adopted in these words: "The following are declared officers of the company, to wit—the president, directors, secretary, treasurer, superintendent and chief engineer. All other persons whose services shall be necessary shall be considered as employees." Another ordi-nance or by-law declared that the chief engineer should hold his office for one year and until his successor is duly elected and qualified, and fixed his salary at $2,000 per annum. The plaintiff was appointed to this place in November, 1869, and again on the 18th day of that month, in the year following.

In February, 1871, was passed an act, as its title declares, "for the benefit of the Western North Carolina railroad com-pany," conferring upon the stockholders the right to re-move the then acting directors, and any of the agents or offi-cers of the company, and to appoint others in their place, and in the event of such removal, designating the state di-rectors by name. Under this act the stockholders met on April 4th, 1871, and after organization against the written protest of the plaintiff proceeded to remove him and elected the defendant to the vacated place of chief engineer, to serve until their next annual meeting. The defendant entered upon the discharge of his official duties and contin-ued to discharge them up to the time of his resignation. For his services during this period he received the stipulated compensation, amounting to $2,338.74, the last portion of which was paid in February, 1873.

Upon this showing His Honor intimated an opinion that the position of chief engineer was not such an office as to give the plaintiff a tenure and vested right thereto, and he could not maintain the action. The plaintiff in submission thereto, suffered a non-suit and appealed.

*Messrs. J. M. Clement* and *D. M. Furches*, for plaintiff.
*Messrs. J. M. McCorkle* and *W. R. Henry*, for defendant.

SMITH, C. J., after stating the case. The only question therefore before us is as to the correctness of this ruling. We are not required to decide upon the redress which the plaintiff may have against those who displaced him, or the corporation for which they professed and undertook to act in disregarding the conditions of the contract, as to the term of service and rate of compensation, involved in the ordinance in force, and entering into the contract when the election was accepted. Nor is it necessary to consider and determine the legal effect upon the defendant's right to the office, as the appointee of the stockholders, *de facto* if not *de jure*, representing the corporation by virtue of an unconstitutional enactment in making the appointment.

The principle governing in such cases is clearly laid down in the cases of *Ellis* v. *N. C. Inst. for Deaf, Dumb and Blind*, 68 N. C., 423, and in *Norfleet* v. *Staton*, 73 N. C., 546, with a mere reference to which we are content, for the reason that the ruling under review is entirely independent of those decisions.

The inquiry is this: Can the plaintiff recover the salary or fees received by the defendant for personal services rendered as chief engineer to the corporation? Has the defendant taken and converted to his own use moneys belonging to the plaintiff, and for which the action for money had and received will lie?

We concur in the view taken by His Honor and for the satisfactory reason he assigns. The controversy does not hinge upon the meaning given to the words, "office and officer," as designating corporate agencies of a higher grade than those denominated employees who are serving their employers under contract.

But is the office of chief engineer of a railroad corporation, created by itself and for its own convenience, such an office as entitles one who has been displaced to recover its possession from the incumbent, and has he a vested estate

in it with the right to all its emoluments and fees by whom-
soever received as compensation for his own personal ser-
vices? The subject has been heretofore before the court,
and the following have been held to belong to this class:

1. A tax-collector. *Patterson* v. *Hubbs*, 65 N. C., 119.

2. The presiding officers of the two houses of the legisla-
ture in exercising a power conferred upon them as such to
appoint proxies and directors in corporations in which the
state has an interest. *Clark* v. *Stanley*, 66 N. C., 59; *Hower-
ton* v. *Tate*, 68 N. C., 547.

3. The directors of the asylums for the Insane and the
Deaf, Dumb and Blind, of the Penitentiary, and the trus-
tees of the University. *Nichols* v. *McKee*, 68 N. C., 429;
*Welker* v. *Bledsoe, Ib.*, 457.

4. The president of this railroad who brought his action
and it was sustained in *Howerton* v. *Tate, supra.*

These cases come within the purview of section 366 of
the Code which authorizes the Attorney General "to bring
an action in the name of the people of the state *upon his
own information* or upon the complaint of any private party
against the parties offending, when any person shall usurp,
intrude into or unlawfully hold or exercise any public office,
civil or military, or any franchise within this state, or any
office in a corporation created by the authority of this state."
It is manifest, as the action may be instituted by the Attor-
ney General "upon his own information," as well as "upon
the complaint of any private party," that the act has refer-
ence to such usurping occupants as are exercising public
functions or conferred franchises, wrongfully, and is con-
fined to an office which, as is said in *Nichols* v. *McKee,* "is a
part of the government and part of the state polity," and
to an officer "who takes part in the government." An
office, such as to properly come within the legitimate scope
of a *quo warranto* information, may be defined," says a re-
cent author, "as a public position to which a portion of the

sovereignty of the country, either legislative, executive or judicial, attaches for the time being, and which is exercised for the benefit of the public." High Ex. Leg. Rem., § 620.

"The three tests to be applied in determining whether an information will lie," are in the words of the same author; "first, *the source of the office;* second, its *tenure;* and third, its duties. The source of the office should be from the *crown or sovereign authority*, either by charter or legislative enactment; its tenure should be fixed and permanent, and its duties should be of a *public nature*." So it has been held that an information will not lie to remove officers of a railroad company who hold office under an election of the directors, as these are merely agents or servants of the company removable at the will of the appointing power. *People* v. *Hill*, 1 Lans. N. Y., 202. In *Burr* v. *McDonald*, 3 Gratt., (Va.) 215, the court declare that the officers of a joint stock company created for private purposes have no franchise in their offices, and are removable during the term for which they are appointed, when found to be incompetent or faithless.

The plaintiff's counsel insists that inasmuch as the power to make all necessary by-laws, rules and regulations is vested in the company by its charter, and the stockholders have under this authority created and declared the office, limiting its duration and determining the salary, and its duties concern the public, the office partakes of a public nature and the same remedy should be afforded to the ejected incumbent to regain possession.

The right to conduct and carry on its business and to constitute the necessary agencies for that purpose is not a delegation of authority to make one of its agents a public officer. The company is essentially a private corporation, its outlays and emoluments private property, but the road when constructed becomes a public highway, and hence land may be taken from an unwilling owner upon making

compensation to him.   *R. and G. R. R. Co.* v. *Davis*, 2 Dev. & Bat., 451.

The true test of a public office seems to be that it is parcel of the administration of government, civil or military, or is itself created directly by the law making power.

It is only such as can avail themselves of the remedy by action under the provision of the Code superseding the former method of procedure by information in the nature of a *quo warranto* to recover possession of the office from which they may have been ejected, that can maintain the suit for the recovery of the fees and emoluments which the usurping intruder has wrongfully received.

We therefore find no error in the record and affirm the judgment.

No error.                                 Affirmed.