CASE 42.—PROSECUTION AGAINST P. H. BUSH· FOR. USURPATION OF OFFICE.—January 15.

# Commonwealth v. Bush

Appeal from Livingston Circuit Court.

Demurrer to indictment sustained, and Commonwealth appeals.—Affirmed.

1. Indictment and Information—Statutory Offense—Mode of Making Objection—Demurrer.—If the facts alleged in an indictment for a statutory offense do not bring defendant within the terms and meaning of the statute, he may take advantage of the omission by demurrer.

2. Documentary Evidence as Part of Indictment.—An agreement of the parties that documentary evidence on which an indictment is based may be considered as a part thereof, though not regular, and not to be commended as a practice, may be accepted for such purpose.

3. Documentary Evidence as Part Thereof—Effect in Considering Demurrer.—Where documentary evidence on which an indictment is based is to be considered as a part thereof, pursuant to an agreement of the parties, the rule that an exhibit filed with the pleading may be looked to on demurrer to contradict or weaken it, but not to add to it, will be applied thereto, and the strength of the indictment is to be tested by such evidence on a demurrer thereto.

4. Failure to State Important Facts.—Failure to state important facts in an indictment, which might properly have been stated, will not alone vitiate it.

5. Taxation—Collection—Rights of Sheriff Against Delinquents.— If a sheriff fail to collect taxes in his hands for ·collection, which are not returned and allowed to him as delinquent, he may be required to account for them to the county and state as if collected, in which event the sums would be due ·him from the taxpayers as for money paid for them; the sheriff being subrogated to the rights of the county and state.

6. Officers—Usurpation of Office—Official Nature of Act—Determination.—The quality of an act claimed to be official in its nature is materially affected by the assumption of the

authority with which it is attended, where, unexplained, the act might itself import the authority.

7. Officers—Definition and Nature of "Office."—An "office" is a public charge or employment; the right to exercise a private or public employment and to take the fees and emoluments thereunto belonging. It implies an authority to exercise some portion of the sovereign power of the state, either in making, administering, or executing the laws. The power and jurisdiction of an office constitute the office and are inseparable from it; and the true test of a public office seems to be that it is a part of the administration of government, civil or military.

8. Officers—Definition of "Officer."—He who performs the duties of an office is an "officer."

9. Definition of "Usurper."—A "usurper" is one who intrudes himself into an office which is vacant, or ousts the incumbent without any color of title.

10. Usurpation—Holding Over After Term Expired.—One who holds over after his term has expired, which under our statute would mean after his successor had been elected and qualified, virtually usurps the office; for he, without color of title, ousts the incumbent and presumes without legal warrant to discharge the duties devolved on that office.

11. Usurper—De Facto Officer.—A usurper is not an officer at all or for any purpose; for there cannot be a de facto officer when a de jure officer already fills the office.

12. Usurpation of Office—What Constitutes.—For one to be a usurper in any of the instances denounced by our statute, he must have assumed not only to exercise some of the functions of the office, but must have assumed to do so as an officer entitled to do the act in question.

13. "Usurpation of Office"—Collection of Taxes.—Where a sheriff collected taxes after his term has expired, giving a receipt therefor as an ex-sheriff. it was not a usurpation of office, within Ky. Stats., 1903, section 1364, as he did not profess in so doing to hold the office of sheriff, or to be entitled to discharge its duties.

JAMES BREATHITT, Attorney General, and TOM B. McGREGOR, Assistant Attorney General, for appellant.

## CONCLUSION.

We agree with the able counsel for appellee, that the amount of tax collected by the appellee as ex-sheriff of Livingston county

Commonwealth v. Bush.

was very small. But does the smallness of the amount lessen
the offense, which is prescribed by a misdemeanor statute passed
by the General Assembly and made the law of the court. It
makes no difference if the tax collected had been but one cent,
if he was acting in the fact of section 1364 of Kentucky Statute,
he was just as guilty, and as amenable to the law. It is true
that there are some things in law as well as in life that are
too small to notice. In a suit—a civil suit—for the recovery of
money or property it is an old maxim—"De minimus non curat
lex"—the law does not notice (or care for) very small or trifling
matters.

But this maxim never has applied in criminal cases, nor could
it do so. A violation of a statute is a violation, and the public
is injured just the same—no matter how small the offense is.

According to the proposition advanced, "that, a prosecution of
a crime should be had, for violating some law, in accordance
with the amount of property taken, injury done, number of people
killed, etc.," how many years should a man be sentenced to the
penitentiary for defaulting by the thousands in some office of
trust and honor, or some bank, or stealing hundreds of thousands
of dollars from widows, of heirs, churches, etc., when we can
send a man who steals two dollars worth of chickens for five
years?

C. C. GRASSHAM for appellee.

WILSON & LANDRUM of counsel.

POINTS AND AUTHORITIES.

1. The acts charged in the indictments are not such as are
contemplated or embraced in section 1364 of the Ky. Statutes.
(Palmer v. Commonwealth, 92 S. W. 588; Eubanks v. Common-
wealth, 103 S. W. 368.)

2. Section 162 of the Criminal Code provides: 'The only plead-
ing upon the part of the defendant is a demurrer or plea."

Subsection 5 of 165 of Criminal Code provides that it is proper
to sustain demurrer: "If the indictment contain matter which is
a legal defense or bar to the prosecution."

For these reasons it was proper to sustain demurrer, as the
receipts filed negative the allegations of the indictments.

3. According to section 11 of the Criminal Code, and 3 Met. 7,
Commonwealth of Ky. v. Adams, the person guilty of usurpation
of office may be proceeded against by indictment or penal action,
that is by indictment or petition. It has been often held by this

Commonwealth v. Bush.

court that an exhibit may be looked to to contradict a pleading and make it bad, but not to help it. (Hudson v. Scottish Union & Nashville Ins. Co., 110 Ky. 26; Miller, &c., v. McConnell, 118 Ky. 293), and many other authorities set out in the brief. The receipts contradict the indictments, hence it was proper to sustain demurrer on that account.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

Appellee was indicted by the grand jury of Livingston county, charged with usurpation of office. The indictment runs in this language: "The grand jurors of the county of Livingston, in the name and by the authority of the Commonwealth of Kentucky, accuse P. H. Bush of the offense of knowingly holding and pretending to exercise the office of sheriff of Livingston county, Kentucky, after his term of office had legally expired, committed in manner and form as follows, to-wit: The said P. H. Bush, in the said county of Livingston, on the 1st day of January, 1908, and before the finding of this indictment, did knowingly hold and pretend to exercise the office of sheriff of Livingston county, Kentucky, after his term of office as said sheriff of Livingston county, Kentucky, had legally expired, by unlawfully collecting and receiving taxes due the State of Kentucky and taxes due the county of Livingston from Thomas Stanley, and giving him a tax receipt therefor, against the peace and dignity of the Commonwealth of Kentucky," etc. By agreement of the prosecution and accused an order was entered in the case reciting that the tax receipts alluded to in the foregoing indictments were filed as part of the indictments, for purposes of testing the sufficiency of the indictments upon demurrer, and they were so treated in the court. The receipts are all in the same form, except as to

amounts collected and the names of the taxpayers. The one following reads: "Received this 1st day of January, 1908, of Thos. Stanley, by B. Barnes, one (1) dollar and 60 cents, in full for revenue and county levy tax for the year 1905, on the list of property here stated. P. H. Bush, Ex-S. L. C."

The statute under which these indictments were returned is section 1364, Ky. Stats., 1903, and is as follows: "If any person shall usurp any office established by the Constitution or laws of this Commonwealth, or shall knowingly hold and pretend to exercise such office, after his election or appointment thereto shall have been declared by a court of competent jurisdiction illegal or void, or after his term of office has constitutionally or legally expired, he shall be guilty of a misdemeanor, and fined in a sum not less than five hundred nor more than fifteen hundred dollars." It has been held that this statute creates three separate offenses, namely: "First, the usurpation of an office; second, knowingly holding and pretending to exercise an office after the election or appointment of the incumbent has been declared illegal by a court of competent jurisdiction; and, third, holding over after the term of the incumbent has constitutionally or legally expired." Palmer v. Commonwealth, 122 Ky. 693, 92 S. W. 588, 29 Ky. Law Rep. 219. Each is in a sense a usurpation of an office; but the statute has separated the offense, so as to make each head a separate misdemeanor, although the same punishment is denounced against each.

The policy of this State requiring that the pleading shall definitely state the facts constituting the offense is adhered to in this statute. Then the accused is notified exactly of the particular in which his breach will be sought to be established; and, if the facts

alleged do not bring him within the terms and mean-
ing of the statute, he may take advantage of the omis-
sion by demurrer.  It may be conceded that the indict-
ments alone stated an offense, as they follow the lan-
guage of that part of the section under which it is
sought to charge the defendant.   However, if the
Commonwealth had incorporated in the indictments
the receipts which were executed by the defendant,
evidencing what he had done, the case now presented
would have come up for decision.   The action of the
parties in agreeing that these receipts shall be con-
sidered as part of the indictments, though not regu-
lar, and not to be commended as a practice, is accepted
for that purpose.  Indictments are found by the grand
jury.   Upon what evidence we can not know.   Nor
are they required to plead the evidence.   The Com-
monwealth's attorney, who draws the indictment, may
have knowledge of the particular transaction in the
minds of the grand jury, or he may not have.   It is
not competent for him to add to or strike from the
indictment, after it has been returned by the grand
jury, except as the Code allows, such averments as
the grand jury may or may not have put into them, so
as to defeat or to change the charge presented by the
grand jury.  If he could do so, then to that extent the
services and jurisdiction of that important constitu-
tional body could be done away with by an adminis-
trative officer.   The practice adopted in this case is
allowed with reluctance, and not without serious
misgivings.

Assuming that the receipts were transactions for
which the indictments were returned, the strength
of the indictments is to be tested by the receipts, or
what they import, we apply the well-known rule in
pleading that an exhibit filed with the pleading may

be looked to upon demurrer to contradict or to weaken the pleading, but not to add to it. It is in this view that the sufficiency of the indictments is tested. From the indictment we gather that the appellee had been sheriff of Livingston county, that his term of office had legally expired, that subsequently he collected taxes due the county and State owing by Thos. Stanley (in the particular instance) for the year 1905, and that he professed to act under an authority assumed or claimed by him to attach to the fact that he had previously been sheriff of the county. The sheriff is ex officio collector of the taxes due the county and State. Section 4129, Ky. St. 1903. The taxes do not belong to the sheriff in any sense, but belong to the county and State. He is charged with them after they are certified to him for collection; but, if he cannot collect them, he may report them as delinquent, and in that case will have credit for them. Section 4251, Ky. St. 1903. They are still owing to the county and State, and may be listed with the sheriff's successor for collection. The sheriff is elected at the November election, occurring quadrennially after the November election of 1897. Section 99, Const. He holds office four years, "and until the election and qualification of his successor;" but, if a successor is not elected at the time prescribed, one may be elected to fill the vacancy at the succeeding November election at which county or State officers are elected. Section 152, Const.; Neeley v. McCollum, 21 Ky. Law Rep. 823, 107 Ky. 143, 53 S. W. 37.

The indictments here do not apprise us when appellee filled the office of sheriff; but, as there was an election to fill that office throughout the State at the November election, 1905, he probably was sheriff

antecedent to that time, as the person then elected would be sheriff until January, 1910.   Even if appellee had been sheriff for the term expiring January, 1906, and his successor, elected November, 1905, had failed to qualify, still an election for State officers occurred in November, 1907, at which one could have been elected to such vacancy and immediately have assumed the duties of the office, though it is possible that he might not have qualified (the indictment does not say that appellee's successor ever qualified), and that appellee held over till January 1, 1908, the date on which he collected the tax in question.   While highly improbable, that state of facts, the indictment shows, might have existed, and, if it had, appellee's act would not have been in violation of the statute being applied now, however he designated himself in giving the receipt.   But this view of the matter cannot prevail, because the indictment failed to show that appellee was sheriff just prior to the election of 1905. For aught it shows, he may have held that office at any time prior to January, 1906.   The draftsman of the indictment evidently attempted to follow the exact language of the statute, but in doing so failed to state certain important facts which might properly have been stated.   But that alone would not vitiate the indictment.

If the sheriff fail to collect taxes in his hands for collection, and which are not returned and allowed to him as delinquent, he might be required to account for them to the county and State as if collected, in which event the sums would be due him from the taxpayers as for money paid for them; the sheriff being subrogated to the rights of the county and State.   Hays v. Williams, 8 Ky. Law Rep. 60.   But, however that might be, the allegation here is that

the taxes were due still and owing the county and State, which would negative the idea that the appellee was collecting money due him under the circumstances just suggested. This brings us back to the question as to the quality of appellee's act, indicated by the receipt quoted.

It seems that to act as a collector of public taxes is to exercise the power and prerogative of a public office. If that alone appeared, it would be difficult to say that the act was not official in its nature. But we apprehend that the quality of an act may be very materially affected by the assumption of the authority with which it is attended. Unexplained, the act might of itself import the authority. But in this case it is seemingly explained. So we must look to the principles of law by which usurpations of public office are to be tested, to see whether the acts in these cases, as explained by the conduct and written declaration of the actor—which have been accepted by the Commonwealth as true—bring them within the principle and within our statute.

Chief Justice Marshall's definition of "office" and "officer," contained in United States v. Maurice, 2 Brock. 103, Fed. Cas. No. 15,747, is thus tersely put: "It [an office] is a public charge or employment, and he who performs the duties of an office is an officer." Or, as Blackstone states it: "An office is the right to exercise a private or public employment and to take the fees and emoluments thereunto belonging." 2 Bl. Com. 36. And as extended in Olmstead v. Mayor, 42 N. Y. Super. Ct. 481: "It implies an authority to exercise some portion of the sovereign power of the State, either in making, administering, or executing the laws." Opinion of the Judges, 3 Me. 481. The power and jurisdiction of an office constitute the

office and are inseperable from it.   Commonwealth
v. Gamble, 62 Pa. 343, 1 Am. Rep. 422.   In Eliason
v. Coleman, 86 N. C. 235, it was said: "The true test
of a public office seems to be that it is a part of the
administration of government, civil or military."

A usurper is one who intrudes himself into an
office which is vacant, or ousts the incumbent, with-
out any color of title.   Palmer v. Commonwealth,
supra: McCraw v. Williams, 33 Grat. (Va.) 513.
One who holds over after his term has expired, which
under our statute would mean after his successor
had been elected and qualified, virtually usurps the
office; for he without color of title ousts the rightful
incumbent and presumes without legal warrant to
discharge the duties devolved upon that office.   For
that reason, we take it, the act is classed as a feature
of, and made an offense as, usurpation of office.   A
usurper is not an officer at all, or for any purpose;
for there cannot be a de facto officer when a de jure
officer already fills the office.   Eubank v. Common-
wealth, 103 S. W. 368, 31 Ky. Law Rep. 746; United
States v. Alexander (D. C.) 46 Fed. 728; McCahon
v. Leavenworth Co., 8 Kan. 437; Matter of Gunn, 50
Kan. 155, 32 Pac. 470, 948, 19 L. R. A. 519.   But
for one to be a usurper in any of the instances de-
nounced by our statute he must have assumed not
only to exercise some of the functions of the office,
but must have assumed to do so as an officer en-
titled to do the act in question.   His act is void always,
it is true.   Warden v. Bayfield, 87 Wis. 181, 58 N.
W. 248; Dabney v. Hudson, 68 Miss. 292, 8 South.
545, 24 Am. St. Rep. 276.   The act may defraud a
stranger dealing with him, or otherwise impose on
some one.   But it is not the act alone that is the
subject of this adverse legislation.   It is the indignity

to the sovereign state, the confusion that might be engendered by such interlopers, who profess to exercise the authority and prerogatives of a public office, when they have neither right nor color of right to do so. Such public annoyances are deemed a serious detriment to the orderly administration of government, and are in consequence punished by the statute.

Under these tests we see that appellee, while his act in collecting taxes after his term of office had expired, was doing that which only a public officer could legally do, yet he did not profess in so doing to hold the office of sheriff, or to be enttiled to discharge the duties of that officer. An ex-sheriff is simply a private citizen. His signature as ex-sheriff does not import that he is then sheriff; does not in fact import anything. There are certain acts which an ex-sheriff may legally do under our statutes, such as executing process in his hands for execution when his term expired, or making certificate or conveyance of what had already been done or partially done by him while sheriff. Section 4575, Ky. St. 1903. But as to the act here in question he was entirely without lawful authority, and his designating himself as ex-sheriff in doing them imported nothing more than if as a private citizen he had essayed to do the thing. In Wayman v. Commonwealth, 14 Bush, 470, the defendant had forcibly displaced another as judge of an election, and pretended to and did himself unlawfully exercise the duties of the office, by receiving votes, causing them to be recorded, and certifying the returns thereof. Had he failed to sign the certificate, his act would have been, doubtless, no less within the statute; for all that he did was as an officer. But had he, without disturbing the rightful incumbent, assumed to act also in the matter, not as an officer,

but as a private citizen, so designating himself, and believing or representing he had the right to do so, his act, though punishable otherwise, would not have been a usurpation of office, because he had not in that event usurped an office. We think appellee was not guilty of the offenses named in the statute, upon the admitted facts.

The judgment sustaining the demurrer to the indictment is therefore affirmed.