## Taylor v. Commonwealth ex rel. Dummit.

June 6, 1947.

W. B. Ardery, Judge.

76

Stanfill, Craft & Homan and Ralph Homan for appellant.

Eldon S. Dummit, Attorney General, and Emmet Mittlebeeler, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This ordinary action was filed in the Franklin circuit court on May 9, 1947, by the Commonwealth on relation of its Attorney General pursuant to the provisions of Chapter XIII of the Civil Code of Practice, sec. 480 et seq., against the defendant, and appellant, C. Waitman Taylor, seeking to deprive him of the right to occupy and discharge the duties of the public office of manager for the State Fair Board in providing for and conducting the State Agricultural Fair, which is now held in Louisville, Kentucky, in September of each year.

It is alleged in the petition as grounds for the relief sought that appellant was and is a usurper of that position which plaintiff in his petition declared to be a public office, and that it was created by Chapter 80 of the Session Acts of 1946, KRS 247.090 et seq., when appellant was a member of the House of Representatives from the 18th Legislative District in Kentucky. Plaintiff also alleged that section 44 of our Constitution rendered appellant ineligible to occupy or discharge any of the duties of that office, it having been created while he was a member of the Legislature.

The defendant in his answer alleged and relied on two grounds in defense of the action; (1) that the position he was filling, and the one from which plaintiff sought to oust him, was not a "public" office within the meaning and contemplation of section 44 of our Constitution, and (2) that the 1946 Act creating the position will not become a law or take effect until December 12, 1949, during which deferred period he had been discharging like duties under the preceding statutes relating to the State Fair as an agent or employee of the State Fair Board, and that he had the right to continue to function under the law in existence prior to the 1946 act in the same manner he had theretofore done until

the 1946 act took effect and became the law of the State on December 12, 1949.

The court on final submission overruled each of those defenses and adjudged appellant "to be a usurper and ineligible to hold the office of manager of the State Fair" and that "the office of manager of the State Fair, heretofore held by defendant, C. Waitman Taylor, vacant." The judgment then ordered and directed that the defendant be restrained from acting in any way as manager of the State Fair, or holding himself out in any way as the duly qualified and acting manager thereof. From that judgment appellant prosecutes this appeal.

In the course of the opinion we will refer to the State Fair Board as the "Board" and to the law existing prior to the taking effect of the 1946 act as the "old statute" and to the 1946 act as the "new statute."

The last preceding statute to the 1946 amendment giving authority for the Board to appoint agents or employees in administering its affairs under its directions is Chapter 7 of the Session Acts of 1940, section 4, which says, inter alia: "It (the board) shall have authority to employ such employees and agents as it shall deem necessary for the conduct of its affairs and those of the State Fair. The Board shall have authority to fix the duties and the compensation of any such employee or agent, with the approval of the Division of Personnel Efficiency." (Our parenthesis.)

It then provided that the Board may require that any such employees or agents execute bond for the faithful performance of their duties. Neither does the 1940 act, nor any other corresponding act preceding it, mention or prescribe for a position designated as "Manager," but only prescribed, as we have seen, that the Board "may" appoint, within its discretion, "employees and agents" to assist in carrying out and executing its policies as formulated and directed by it. However, the Legislature in the new act in delegating to the Board authority to appoint agents and employees, as contained in the old statute repealed it and enacted in lieu thereof what is now section 247.130, KRS, which says:

"(1) The State Fair Board shall appoint a man-

ager who shall not be one of their number. The manager shall be appointed on the basis of training, ability and experience. The manager shall hold his position during the pleasure of the board, but may be removed only by an affirmative vote of six members of the board. The manager shall be responsible for the administration of the policies set by the board, shall devote his entire time and attention to the performance of such duties and work as may be required of him by law or be assigned to him by the board, and shall receive such salary, fixed on an annual basis, as the board may determine.

"(2) The manager may organize such administrative divisions as may be necessary and may designate chiefs of such divisions who, under his control and supervision, shall have the duties of direction of such divisions. The manager may employ such other employes and agents as he deems necessary for the carrying out of the policies of the board and to conduct the affairs of the State Fair, and may fix the duties and compensation of any employes or agents with the approval of the board."

In section (4) of the same act and section of KRS it is prescribed that the "manager, employes and agents provided for in this section shall not be subject to the provisions of KRS 42.110 or 42.120." The exclusions so prescribed have no bearing upon the merits of this case.

It will at once be seen that the 1946 act is the first one to expressly designate a manager to assist the Board in performing its duties, instead of only "employees and agents" that it might appoint within its discretion, as prescribed by the old law. The new statute not only enlarged the power and authority of its newly created position of manager, but required that he should be responsible for the administration of the policies set by the Board, and "shall devote his entire time and attention to the performance of such duties and work as may be required of him" by law or by the Board, and that his position should be permanent and receive compensation to be fixed by the Board "on an annual basis." Furthermore, subsection (2) of the same KRS section supra of the new statute authorizes its newly created position of "manager" to

"organize such administrative divisions as may be necessary and may designate chiefs of such divisions who, under his control and supervision, shall have the duties of direction of such divisions" to "employ such other employees and agents as he deems necessary for the carrying out of the policies of the board," and "to conduct the affairs of the State Fair, and may fix the duties and compensation of any employes or agents with the approval of the board"—the approval referring to the compensation of the employees that the manager might employ.

From the duties, functions, power and authority so conferred upon the newly created position of "manager" there can be no doubt but that the position so provided for by the new statute was intended by the Legislature to be, and it actually is, an office and its incumbent an officer. In substantiation of that conclusion we need actually go no farther than to cite the opinions of this court in three cases, the first being Com. v. Bush, 131 Ky. 384, 392, 115 S. W. 249, 251. One of the questions there involved was what are the requirements necessary in the creation of a public office and to clothe the incumbent with the habiliments of an officer. Judge O'Rear in writing the opinion for this court said: "Chief Justice Marshall's definition of 'office' and 'officer,' contained in United States v. Maurice, Fed. Cas. No. 15,747, 2 Brock 96, 103, is thus tersely put: 'It (an office) is a public charge or employment, and he who performs the duties of an office is an officer.' Or, as Blackstone states it: 'An office is the right to exercise a private or public employment and to take the fees and emoluments thereunto belonging.' 2 Bl. Com. 36. And as extended in Olmstead v. Mayor, 42 N. Y. Super. Ct. 481: 'It implies an authority to exercise some portion of the sovereign power of the state, either in making, administering, or executing the laws.' Opinion of the Judges, 3 Me. 481. The power and jurisdiction of an office constitute the office and are inseparable from it. Commonwealth v. Gamble, 62 Pa. 343, 1 Am. Rep. 422. In Eliason v. Coleman, 86 N. C. 235, it was said: 'The true test of a public office seems to be that it is a part of the administration of government, civil or military.'"

The same question was before the court in the case of City of Lexington v. Thompson, 250 Ky. 96, 61 S. W.

2d 1092, 1093, and in the course of our opinion we said, after pointing out the difficulty in some cases to draw the line between the position of agent or mere employee and that of an officer, that: "Law-writers and courts in defining that position known in the law as an 'office,' and its incumbent as an 'officer,' have suggested some incidents which are usually found as attaching to the position, but the presence of some of which it is universally declared are nonessential, although they are usually incident to the position of an *office* or to an incumbent as an *officer.*"

We then referred to the case of State ex. rel. v. Hawkins, 79 Mont. 506, 257 P. 411, 418, 53 A. L. R. 583, in which the same question was involved, and adopted as correct, a definition of the words "office" and "officer" as made by that court, saying: "After an exhaustive examination of the authorities, we hold that five elements are indispensable in any position of public employment, in order to make it a public office of a civil nature: (1) It must be created by the Constitution or by the Legislature or created by a municipality or other body through authority conferred by the Legislature; (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the Legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power, other than the law, unless they be those of an inferior or subordinate office, created or authorized by the Legislature, and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity, and not be only temporary or occasional. In addition, in this state, an officer must take and file an official oath, hold a commission or other written authority, and give an official bond, if the latter be required by proper authority."

A still later case, approving the same definition adopted in the above two cases, is Alvey v. Brigham, 286 Ky. 610, 150 S. W. 2d 935, 135 A. L. R. 1024. All of the elements and conditions necessary to the creation of a public office, and its incumbent as an officer, are pointed out in those three cases, and the substance of the defi-

nition as contained in the cited Montana opinion, was approved in each of our cited cases. Foreign cases and text authorities are, Black's Law Dictionary, Third Edition, page 1285, where the author in defining what is a public office, says:

"Public Office. The right, authority, and duty created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of government for the benefit of the public. Walker v. Rich, 79 Cal. App. 139, 249 P. 56, 58. An agency for the state, the duties of which involve in their performance the exercise of some portion of the sovereign power, either great or small. Yaselli v. Goff, 2 Cir., 12 F. 2d 396, 403, 56 A. L. R. 1239; Winsor v. Hunt, 29 Ariz. 504, 243 P. 407, 413; Truitt v. Collins, 122 Md. 526, 89 A. 850, 851; State ex rel. Zevely v. Hackmann, 300 Mo. 59, 254 S. W. 53, 55; State v. McLean, 35 N. D. 203, 159 N. W. 847, 851; State v. Bond, 94 W. Va. 255, 118 S. E. 276, 279; Commissioners' Court of Limestone County v. Garrett, Tex. Com. App., 236 S. W. 970, 972; Board of Education of Doerun v. Bacon, 22 Ga. App. 72, 95 S. E. 753, 754; Lacey v. State, 13 Ala. App. 212, 68 So. 706, 710; Curtin v. State, 61 Cal. App. 377, 214 P. 1030, 1035; Shelmadine v. City of Elkhart, 75 Ind. App. 493, 129 N. E. 878. Where, by virtue of law, a person is clothed, not as an incidental or transient authority, but for such time as denotes duration and continuance, with independent power to control the property of the public, or with public functions to be exercised in the supposed interest of the people the service to be compensated by a stated yearly salary, and the occupant having a designation or title, the position so created is a public office. State v. Bronnan, 49 Ohio St. 33, 29 N. E. 593."

To the same effect are many cases cited in Vol. 29, Words and Phrases, Perm. Ed., pages 286-292. Also 49 A. J. 881, sec. 3 to and including section 7. It will be found in the authorities cited that the requirements of continued service and the duration thereof is supplied, notwithstanding the statute creating the office may provide (as does the one under consideration) for the removal of the incumbent by the appointing agency, or other designated public authority, under conditions pre-

scribed in the creating statute. The new statute, as we have seen, prescribes that the incumbent of the position of manager for the State Fair Board may himself employ agents and employees and create divisions and fill them with the required personnel and perform a number of other services clearly indicating that he exercises sovereign governmental power in performing the public duties imposed upon him. We therefore conclude that the court properly overruled ground (1) interposed by appellant.

We will now proceed to the determination of the question raised by appellant in his second ground of defense. It is difficult for us to understand the confidence and the seriousness with which this defense is urged in the light of the fact that the 1946 Legislature itself expressly provided, in an emergency clause attached to the new act saying: "Whereas, it will be necessary to immediately plan for the coming Kentucky State Fair (the following September, as then and now prescribed), and to administer the many other affairs of the State Fair Board, an emergency is declared to exist, and this bill *shall become effective* upon its passage by the General Assembly and approval by the Governor." (Our parenthesis and emphasis.)

Whether or not that clause complies with the requirement of the Constitution in permitting the Legislature to enact an emergency clause for the taking effect of a statute, so as to precipitate its effective date conforming to such requirement, is not material here (although we are clearly of the opinion that it does so), since it took effect and became a law upon the expiration of 90 days after the close of the session without a legally enacted emergency clause. The session adjourned on March 21, 1946, and the new act took effect in any event 90 days thereafter. After the expiration of that 90 days, appellant continued to serve as agent or employee of the old Fair Board, selected under the old statute, until April 14, 1947, when he applied to the then old Board to appoint or elect him to the newly created position of manager under the new statute, which it did followed by the filing of this action. In the meantime appellant continued to be the de jure representative of his district as a member of the House of Representatives, an office he now holds, unless it was

vacated by his accepting his position of manager, which would ipso facto vacate his membership in the House of Representatives, a question not here presented. In taking the position that the new act did not take effect until after the terms of all of the members of the old Board expired thus postponing its effective date until December 12, 1949, counsel confuses the effective date of the act with the date when all of its requirements are fulfilled, although the act itself, as well as the Constitution, prescribed when it should take effect. Such position is directly in conflict with the plainly expressed desire and purpose on the part of the Legislature that the act should not only take effect at the earliest moment but also that it should become operative from and after its taking effect which could be done only by the then existing old Board.

It will be noted that the only postponement contained in the new act related to the appointment of members of the Board as contemplated and prescribed by it; but in the meantime its provisions became effective when the act took effect following which the old Board should carry out and execute the provisions of the new act. Defendant recognized and conceded that interpretation when he applied to the old Board for the newly created position of manager. If his interpretation be correct then his appointment was made more than three years before the statute became effective, and he acquired nothing for his pains. That it is competent for the Legislature to so provide is shown by the text in 50 A. J. 515, sec. 496, and by opinions of foreign courts, some of which are, Lane v. Kolb, 92 Ala. 636, 9 So. 873, and Fox v. McDonald, 101 Ala. 51, 15 So. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98.

Our Legislature as does most, if not all, similar bodies in other states, possesses the authority to enact any statute it deems necessary for the public interest, unless prohibited by constitutional provisions. In the exercise of that authority it may frame its enactments and express its intention and purpose as it sees proper, as long as it does not conflict with any inhibition contained in the Constitution of its state.

Counsel for appellant call our attention to the case of Meredith, Atty. Gen., v. Kauffman, 293 Ky. 395, 169

84

S. W. 2d 37, in support of their client's contention that his being a member of the Legislature that passed the new act did not render him ineligible for the position of manager created by the new act. But the facts of that case are so different from those appearing in the instant one as to render it entirely inapplicable. In that case the member of the Legislature (1942 session) which enacted a statute creating the office of assistant county attorney was elected at the regular election in 1941, and died in the midst of that session. By a special election to fill the vacancy so created Kauffman was elected and served for the remainder of that session; but before he was sworn in the act creating the office of assistant county attorney had been enacted. Therefore, Kauffman was not a member of the session at the time the statute was enacted. After the expiration of that session Kauffman sought and obtained the position of assistant county attorney of his county of Garrard when his eligibility under section 44 of the Constitution was questioned by a court action. We held that the common sense interpretation of that section was that the inhibition contained in it applied only to *sitting* members of the Legislature *at the time* of the creation of the office, and not to a member elected to fill a vacancy and who was sworn in after the act creating the office was enacted and before the vacancy occurred.

It therefore becomes obvious that the learned trial Judge correctly determined the issues involved, and the judgment is accordingly affirmed.